REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0490

September Term, 2014

———————————————

LEN STOLER, INC.

v.

TRACY L. WISNER

———————————————

Woodward,
Hotten,
Salmon, James P.,
        (Retired, Specially Assigned)

JJ.

———————————————

Opinion by Hotten, J.

———————————————

Filed:  May 28, 2015

A creditor brought suit against an automobile dealer challenging the dealer's retention of certain fees and charges associated with the purchase of a vehicle, alleging violations of the Maryland Closed-End Credit Grantor Law. The car dealer moved for summary judgment, which was denied by the Circuit Court for Baltimore County. The court also granted the creditor's motion for partial summary judgment. In the order the court stated: "[t]o the extent that this Order is not a final judgment, this court expressly determines, pursuant to Maryland Rule 2-602(b) that there is no just reason for delay, and this otherwise final Order should be entered as a final judgment, notwithstanding that it adjudicates fewer than all of the claims at issue in this action." On appeal, the dealer presents three questions for our review:

> 1. Whether the [c]ircuit [c]ourt erred when it determined that Maryland's Closed-End Credit Grantor Law, [Md. Code Ann. Comm. Law], §12-1001, *et. seq.* ("CLEC"), prohibited [Len Stoler Inc.,] from collecting and retaining the [electronic titling fee], despite express permission to do so in [Md. Code Ann., Transp.] §13-610 and [Md. Code Regs.] 11.12.01.23(A) & (B)?

> 2. Whether the [c]ircuit [c]ourt erred when it held, implicitly, that [appellee] had standing to sue for the alleged injury caused by [Len Stoler Inc.,]'s retention of the Tax Allowance, notwithstanding that [appellee] had no rights to the funds and that the funds collected would otherwise have gone to the State and not to [appellee]?

> 3. Whether the [c]ircuit [c]ourt erred when it determined that Maryland's Closed-End Credit Grantor Law, [Md. Code Ann. Comm]. Law, §12-1001, *et. seq.*, prohibited [Len Stoler Inc.,] from collecting and retaining the Tax Allowance despite express permission to do so in [Md. Code Ann., Transp.] §13-812?

For the reasons that follow, we shall reverse the judgment of the circuit court.

**FACTUAL AND PROCEDURAL HISTORY**

On March 30, 2011, appellee, Tracy Wisner, purchased a 2011 Lexus from appellant, Len Stoler, Inc., ("LSI"), an automobile dealer, for $51,867.50. Appellee traded in a Jeep she owned in lieu of a down payment, and financed the remainder through Toyota Credit Motor Corporation. Appellee signed a sales contract that was a standard form document LSI used for all purchases. The contract included an itemized list of all charges including: a $4.00 charge for taxes paid to government agencies; a $220.00 charge for government registration fees; and a $50.00 charge for government certification of title fees.

Two years later, appellee filed a putative class action lawsuit against LSI alleging causes of action related to the three charges referenced above. In her original complaint, she asserted that LSI had overcharged her $104 for the fees. LSI explained that out of the $220 in government registration fees, it had only actually incurred $140 in fees and accordingly, sixteen days after appellee purchased the vehicle, on June 15, 2011, it issued her an $80 refund which appellee accepted and deposited within days of receipt. As a result of this realization, appellee amended her complaint, alleging that LSI had improperly collected $24, had double charged her this amount and improperly retained the fee in violation of the Credit Grantor Closed End Credit Provisions ("CLEC"). LSI moved for summary judgment, asserting that it was authorized by the Transportation Article to collect the retained $24. Additionally, it argued that appellee was incorrect in her assertion that she had been double charged the $24 and ascribed the confusion to appellee misreading the sales documents. LSI averred that appellee confused a separate $24 fee, which consisted of the $4 tire recycling fee and the $20 electronic titling fee. In her opposition to LSI's

- 2 -

motion for summary judgment, appellee altered her argument slightly: she no longer claimed that she had been double charged the $24 tax allowance, but rather asserted that LSI had violated CLEC by improperly retaining the $24 tax allowance and the collected $20 electronic titling fee – bringing the total amount she alleged she was overcharged to $44.

The court held a hearing on the motion and a cross motion for summary judgment filed by appellee on March 26, 2014 and after both parties argued, the court adjourned to review two cases brought to its attention, *Biggus v. Ford Motor Credit Co.*, 328 Md. 188 (1992) [hereinafter *Biggus*] and *Ford Motor Credit Co., v. Roberson*, 420 Md. 649 (2011) [hereinafter *Roberson*].  The hearing resumed on April 23, 2014 and, following additional arguments, the court granted appellee's motion for partial summary judgment, and denied LSI's motion for summary judgment, ruling that the CLEC prohibited LSI from charging appellee either the $20 electronic titling fee or the $24 charge for collecting excise taxes.[1]

LSI noted an appeal several days later.  Additional facts will be presented, to the extent they prove relevant in addressing the issues on appeal.[2]

---

[1] Appellee also had a pending class certification motion at the time of the hearing. Since the court was advised that LSI would be appealing its decision, it did not rule on appellee's motion for class certification and entered a final order.  *See* Maryland Code (1974 Repl. Vol. 2013) §12-301, Courts and Judicial Proceedings Article.

[2] We note that an amicus brief was submitted by the Maryland Automobile Dealers Association in support of LSI's position, which was helpful in outlining some of the legislative history.

## STANDARD OF REVIEW

Summary judgment is proper where the circuit court determines that there are no genuine disputes as to any material fact and that the moving party is entitled to judgment as matter of law. *See* Md. Rule 2-501. We review a circuit court's grant or denial of summary judgment *de novo*. *See Haas v. Lockheed Martin Corp.*, 396 Md. 469, 479, 914 A.2d 735, 741 (2007). In reviewing the grant of a motion for summary judgment, appellate courts focus on whether the circuit court's grant of the motion was legally correct. *Laing v. Volkswagen of Am., Inc.*, 180 Md. App. 136, 152-53 (2008) (citations omitted).

## CERTIFICATION FOR FINAL JUDGMENT

Before considering the merits of this appeal, we must engage in a jurisdictional inquiry, specifically, whether the circuit court was correct in certifying its summary judgment ruling as a final order. Although neither party raised this issue in their briefs, we note that if certification was improper, the appeal must be dismissed for lack of jurisdiction. *See Huber v. Nationwide Mut. Ins. Co.*, 347 Md. 415, 419 (1997) (declining to address the merits of an appeal predicated on the lack of jurisdiction as a result of the circuit court improperly certifying its declaratory judgment as a final judgment). *See also Shofer v. Stuart Hack Co.*, 107 Md. App. 585, 591 (1996) (addressing the circuit court's certification of a final judgment even though neither party raised the issue on appeal, and explaining that appellate courts cannot exercise subject matter jurisdiction over an appeal unless there was a properly entered final judgment before the circuit court). We review a circuit court's entry of a final judgment pursuant to Maryland Rule 2-602 *de novo*, and accordingly, we give no deference to the circuit court's findings. *Id.* at 591.

In the case at bar, the parties filed cross motions for summary judgment and appellee filed a motion for class certification. Following oral arguments on the cross motions, the circuit court denied appellant's motion and granted appellee's partial motion for summary judgment. Regarding the class certification motion, the following colloquy occurred:

> THE COURT: Now, the next part of this case is the [appellee's] request to have the class certified. I try to be a practical judge and I suspect I'm not the last word on this case and it seems to me that if Len Stoler intends to appeal this case on my decision, I believe it is prudent and more efficient with considering all the possible costs involved that this be considered an appealable order at this time before we go down the road of class certification.
>
> [APPELLANT'S COUNSEL]: Thank you, Your Honor. That is Len Stoler's intention.
>
> THE COURT: So I believe that is the prudent way to proceed. Did you wish to be heard on that, [appellee's counsel]?
>
> [APPELLEE'S COUNSEL]: No, Your Honor. That's fine.
>
> THE COURT: I mean, it might save you money in the long run, too, or expense.
>
> [APPELLEE'S COUNSEL]: I agree. We want to know the ultimate answer.

The court later issued its order, ruling in part "[t]o the extent that this Order is not a final judgment, this [c]ourt expressly determines, pursuant to Maryland Rule 2-602(b) that there is no just reason for delay, and this otherwise final Order should be entered as a final judgment, notwithstanding that it adjudicates fewer than all of the claims at issue in this action."

The "final judgment rule" is codified in the Maryland Code, (1974 Repl. Vol. 2013) Courts & Judicial Proceedings §12-301, which provides that "a party may appeal from a

- 5 -

final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law." The Court of Appeals has explained that there are only three exceptions to the final judgment rule:

> Rather, we have made clear that the right to seek appellate review of a trial court's ruling ordinarily must await the entry of a final judgment that disposes of all claims against all parties, and that there are only three exceptions to that final judgment requirement: appeals from interlocutory orders specifically allowed by statute; immediate appeals permitted under Maryland Rule 2–602; and appeals from interlocutory rulings allowed under the common law collateral order doctrine.

*Salvagno v. Frew*, 388 Md. 605, 615 (2005).

> Maryland Rule 2-602 provides:
>
> (a) Generally. Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:
>> (1) is not a final judgment;
>> (2) does not terminate the action as to any of the claims or any of the parties; and
>> (3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.
>
> (b) When Allowed. If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:
>> (1) as to one or more but fewer than all of the claims or parties; or
>> (2) pursuant to Rule 2-501 (f)(3), for some but less than all of the amount requested in a claim seeking money relief only.

In *Shofer*, *supra*, the plaintiff sued his former accountants, alleging that as a result of their financial advice, he incurred more than $100,000 in state and federal tax penalties. 107 Md. App. at 589. His case was dismissed and following an appeal before the Court of Appeals, the matter was remanded for trial. *Id*. at 590. Before the circuit court prior to trial, there were three separate orders issued in response to various motions, all ruling against the plaintiff. *Id*. At a pre-trial conference, the plaintiff expressed that he planned on appealing the three orders regardless of the outcome of the trial. *Id*. at 591. Therefore, the circuit court certified the three orders as final judgments so that the plaintiff could appeal to this Court. *Id*.

On appeal, we *sua sponte* addressed whether the circuit court's certification of the three orders as final judgments was improper. *Id*. at 592. We opined:

> Rule 2–602 is not a conduit for trial judges to certify any interlocutory order as a final judgment so as to acquire an advisory opinion from this Court on a pressing legal issue. The certification process is "limited to orders which, by their nature, have a characteristic of finality. Such orders must be completely dispositive of an entire claim or party." *Snowden v. Baltimore Gas & Electric*, 300 Md. 555, 563, 479 A.2d 1329 (1984); *see also Pearlstein v. Maryland Deposit Ins.*, 79 Md. App. 41, 51, 555 A.2d 528 (1989) (stating that "[a]n order that merely resolves an issue within a claim rather than an entire claim may not be certified pursuant to this rule"). A trial judge should only certify orders for final judgment in extraordinary circumstances and in an effort to prevent "sufficient hardship or unfairness." *Planning Bd. v. Mortimer*, 310 Md. 639, 648, 530 A.2d 1237 (1987).

*Id*. at 594. We continued, noting that our first inquiry was whether the order disposed of an entire claim. *Id*. The second inquiry was whether "no just cause for delay" existed. *Id*. Regarding the "no just cause for delay" requirement, we listed four factors that may be considered, whether a delay of appeal: 1) would create a "harsh impact" on the litigants,

- 7 -

including an economic impact; 2) would create a risk that the same issues would be raised in subsequent appeals; 3) "whether disposition of the remaining claims might moot the need for an immediate appeal"; and 4) if an appeal would result in the appellate court deciding questions still before the trial court. *Id*. at 595. We concluded that the three orders did not dispose of entire claims and that based on the record, it was not established that there was no just cause to delay the appeal process. *Id*. at 596. Accordingly, we dismissed the appeal. *Id*.

In the case at bar, we conclude that both requirements to certify a final judgement under Md. Rule 2-602 were met. The denial of appellant's summary judgment and grant of appellee's motion for partial summary judgment resolved the claims raised appellee's complaint – specifically that appellee had violated CLEC by retaining the two fees.[3] Accordingly, this ruling meets the threshold required to permit certification of a judgment as a final judgment. Next, the court's order reasoned that there was no just reason for delay, and we agree. *Cf. Tyrone W. v. Danielle R.*, 129 Md. App. 260, 270 (1999) (holding that the certification of final judgment under Md. Rule 2-602(b) was improper where the circuit court failed to express a finding of "no just reason for delay."). Following the court's summary judgment ruling, the remaining issue was appellee's outstanding class certification motion. The circuit court explained in its oral ruling that it was prudent and

---

[3] *But see Carl Messenger Serv., Inc. v. Jones*, 72 Md. App. 1, 4 (1987) (explaining that when an order resolves merely an issue within a claim, as opposed to the entire claim itself, that order may not properly be certified as a final judgement and holding that summary judgment disposing of a counter claim based on statute of limitations resolved only an issue of a claim and therefore, was insufficient to permit certification under Rule 2-602).

efficient, in terms of both time and money, to permit an appeal without delay. Some reasons that this Court and the Court of Appeals have held can be permissible justify certification of a final order are to avoid "duplication of efforts and costs in cases" and to avoid the "potential that delay of the appeal may work an economic hardship upon one or more of the parties." *Gress v. ACandS, Inc.*, 150 Md. App. 369, 381 (2003). Considering the four factors enumerated in *Shofer*, we find that delay of this appeal would have imposed a harsh impact on the litigants, namely, the economic impact of litigating the class certification motion. Next, we find that it is a near certainty that this same issue would be considered in a subsequent appeal. Appellant's collection and retention of the fees was the entire basis of the lawsuit, therefore, appellants would certainly appeal this circuit court's ruling that they violated CLEC by retaining the fees. Disposition of the remaining claim, specifically the class certification motion, would not moot the need for an intermediate appeal. Even if the court denied the class certification motion, it had still ruled that appellant had violated CLEC. Finally, this Court's consideration of the appeal would not require that we determine issues still before the trial court. We find that there was no just cause for delaying an appeal, especially considering our conclusion and the impact that this case has on Maryland consumers, automobile dealers, and the Motor Vehicle Administration. *See Bessette v. Weitz,* 148 Md. App. 215, 233-34 (2002) (finding that there was no reason to delay an appeal predicated on this Court's findings regarding the circuit court's certification and considering our conclusions on the merits of the case).

Accordingly, we find that the circuit court did not err in certifying its summary judgment order as a final judgment pursuant to Maryland Rule 2-302(b), and shall now turn to the merits of this case.

## DISCUSSION

In 1983, the General Assembly enacted the Credit Grantor Closed End Credit Provisions ("CLEC"), codified in Maryland Code, Commercial Law Article §12-1001 *et. seq*. [hereinafter Com. Law] It governs closed end credit transactions and regulates interest rates, charges, default and other aspects of a credit transaction. Com. Law §12-1005(b) permits a dealer to collect reasonable fees for services rendered in connection with a loan.

> (b) Reasonable fees for services rendered or for reimbursement of expenses incurred in good faith by the credit grantor or its agents in connection with the loan, including:
>> (1) Commitment fees;
>> (2) Official fees and taxes;
>> (3) Premiums or other charges for any guarantee or insurance protecting the credit grantor against the borrower's default or other credit loss;
>> (4) Costs incurred by reason of examination of title, inspection, recording, and other formal acts necessary or appropriate to the security of the loan;
>> (5) Filing fees;
>> (6) Attorney's fees; and
>> (7) Travel expenses.

However, if the loan is taken out by a consumer borrower, Com. Law §12-1005(d) prohibits a dealer from collecting the fees enumerated in subsection (b).

> (d)(1) In the case of a loan to a consumer borrower, a fee permitted under subsection (b) of this section may not be charged and collected unless:
>> (i) The agreement, note, or other evidence of the loan permits;
>> (ii) The fee is an actual and verifiable expense of the credit grantor not retained by him; and
>> (iii) Limited to charges for:

- 10 -

>1. Attorney's fees for services rendered in connection with the preparation, closing, or disbursement of the loan;
>2. Any expense, tax, or charge paid to a governmental agency;
>3. Examination of title, appraisal, or other costs necessary or appropriate to the security of the loan; and
>4. Premiums for any insurance coverage permitted under this subtitle.

Appellee alleges that pursuant to the language of CLEC, LSI improperly retained both an electronic titling fee and an excise tax allowance. In response, LSI argues that while CLEC is the applicable law, the Transportation Article explicitly permits it to collect and retain both amounts. Maryland Code, Transportation Article [hereinafter Transp.] (1977 Repl. Vol. 2012) §13-610 permits a dealer to issue permanent registration plates to a buyer by electronically transmitting the registration to the MVA and to charge the buyer a fee for doing so. This is the electronic titling fee.[4] The Code of Maryland Regulations ("COMAR") 11.12.01.23 provides that this fee may be no more than $20 and that the dealer may retain the fee, as opposed to forwarding it to the MVA. Likewise, Transp. §13-812 permits a dealer to keep $24 of the excise tax it collects for the State.[5] LSI contended that these two provisions created exceptions to the general requirements of CLEC.

### 1. Electronic Titling Fee

LSI argues that the circuit court erred when it found that CLEC prohibited it from collecting and retaining the electronic titling fee, notwithstanding the fact that Transp. §13-

---

[4] In its briefs, both parties reference this fee as the CVR fee but we will use the name referred to in the Code and by other Maryland state agencies.

[5] This statute has since been amended to allow a dealer to "keep the lesser of $12 per vehicle or 0.6 percent of the gross excise tax the dealer collects."

610 authorizes a dealer to collect and retain the fee. Appellee responds in her brief that LSI is mischaracterizing the court's finding and that in fact, the court only concluded that LSI could collect the fees, but CLEC prohibited it from financing those fees. Preliminarily, we disagree with appellee's characterization of the court's ruling. The court concluded that in consumer borrower transactions, such as appellee's, the fee could not be retained. It made no distinction that LSI could retain the fees but not finance them.

There is no dispute that Com. Law §12-1005(d) and Transp. §13-610 conflict with one another. The Transportation Article permits a dealer to collect the electronic titling fee while CLEC states that for a consumer borrower transaction, the fee may not be retained. Accordingly, our task is to reconcile this conflict based on the principles of statutory construction. The primary endeavor in statutory construction is to ascertain and effectuate the intent of the General Assembly. *See McGraw v. Loyola Ford, Inc.*, 124 Md. App. 560, 592 (1999); *Marriott Employees Fed. Credit Union v. Motor Vehicle Admin.*, 346 Md. 437, 444-45 (1997). If the General Asssembly's intent is clear from the language of a statute, then our inquiry ends here. *Id*. However, if it is not, then we may look beyond the text, to the context in which the statute was enacted under. *Id*. "Context may include legislative history and 'other material that fairly bears on the fundamental issue of legislative purpose or goal.'" *Nesbit v. Gov't Employees Ins. Co.*, 382 Md. 65, 77 (2004). Additionally, in instances such as the circumstances we are presented with – when two statutes relate to the same subject matter – "[b]y the often-expressed rule of statutory construction, [the two] will be harmonized to the fullest possible extent." *Biggus*, 328 Md. at 208; *see also Kaczorowski v. Mayor & City Council of Baltimore*, 309 Md. 505, 511 (1987).

- 12 -

Since the plain language of the statutes renders a conflict, we turn to the context and legislative history of both. We find the Court of Appeals decision in *Biggus* helpful. *Biggus* involved two appeals by plaintiffs who had financed automobile purchases, defaulted on their loans, and had their vehicles repossessed by the defendant, Ford. 328 Md. at 191-193. The plaintiffs sued, alleging that their sales contracts were governed by the Retail Installment Sales Act ("RISA")[6], and that Ford had not complied with the applicable statutory requirements relating to repossession. *Id*. at 192, 193. The circuit court in both cases held that CLEC applied and granted summary judgment in favor of Ford. *Id*.

Before arriving at its conclusion that CLEC applied to the sales contracts, the Court of Appeals engaged in a review of the local and legislative history that led to CLEC. *Id*. at 196. It explained that in the early 1980's, four Maryland banking institutions moved their operations to Delaware, seeking out more favorable banking laws. *Id*. at 197. As a result, the State lost at least 1,000 jobs. In response, the General Assembly passed the Credit Deregulation Act of 1983. *Id*. This Act created a number of new laws in relation to banking and credit transactions. Specifically, CLEC permitted credit grantors to collect certain fees and included a number of favorable regulations for credit grantors in the state, but also carried penalties if its provisions were violated. Credit grantors could chose to engage in consumer installment sales governed by either RISA or by CLEC, but had to do so at the time of the contract. *Id*. at 198. Following a detailed analysis of the sales contract used by

---

[6] Maryland Code, (1975, Repl. Vol. 2013), Commercial Law Article §12-601 *et. seq*.

Ford, the Court of Appeals concluded that Ford had elected to have its contract governed by CLEC as opposed to RISA. *Id*. at 208. The Court later addressed a question that has some bearing on the case at bar; specifically, whether CLEC was intended to exclusively govern all aspects of an applicable transaction or if other laws were applicable in areas which CLEC is silent. *Id*. The Court of Appeals remarked that when CLEC applies, "RISA, or other Maryland law, [is not] entirely irrelevant to the credit transaction." *Id*.

Following the *Biggus* decision, the General Assembly was concerned with the Court of Appeals' implication that other credit transaction requirements could apply to CLEC transactions and that this may have detrimental effects on the credit industry. Consequently, in 1993, it amended CLEC to clarify its intent relative to the applicability of CLEC, RISA or other credit transaction statutes. *See Roberson*, 420 Md. at 665-68. *Roberson* explained:

> The bill file also contains a press release dated February 18, 1993, that demonstrates that the legislation was designed to overrule *Biggus*, insofar as *Biggus* suggested that areas of RISA may be read into OPEC or CLEC, as follows: The effect of the proposed legislation is to clarify that, for any extension of credit made prior to October 1, 1993, so long as a credit grantor has specifically elected to be under [OPEC or CLEC] or can be construed to have extended credit under [OPEC or CLEC] (where there was no specific election), [OPEC or CLEC] is the controlling law governing the extension of credit and provisions of other law may not be read into the loan agreement. This exclusivity will also apply to extensions of credit made under [OPEC or CLEC] after October 1, 1993, provided that the credit grantor has made a valid written election. This will provide a great deal of security to Maryland lenders by protecting their current loan portfolios from lawsuits and reassuring lenders that when they make loans under certain portions of Maryland law they know exactly what provisions of law apply. Press Release, Feb. 18, 1993, House Bill 424 (on file with Department of Legislative Services).

*Id*. at n.13.

As *Roberson* explains, the General Assembly's response to *Biggus* revealed its intent that when a credit grantor opted into one particular credit transaction statute, only that statute was applicable. Its goal was to create certainty in credit contracts. This conclusion however, had no bearing on other applicable, non-credit transaction statutes. Accordingly, as with other statutes, other applicable Maryland laws and regulations apply as appropriate.

In conjunction with the legislative history of CLEC, there are several canons of statutory construction we find applicable in the instant case. One is the principle that when the provisions of two statutes conflict, the more recent statute takes precedence over the earlier statute. The Court of Appeals has explained that:

> Because the General Assembly is presumed to have intended that all its enactments operate together as a consistent and harmonious body of law, statutes will be interpreted, whenever reasonably possible, to avoid repeal by implication. If two statutes contain an irreconcilable conflict, however, the same presumed legislative intent requires that the statute whose relevant substantive provisions were enacted most recently be held to have repealed by implication any conflicting provisions of the earlier statute.

*Farmers & Merchants Nat. Bank of Hagerstown v. Schlossberg*, 306 Md. 48, 61 (1986) (internal citations omitted); *see also McGraw v. Loyola Ford, Inc.*, *supra*, 124 Md. App. at 594 (1999). Furthermore, "[w]e presume that the General Assembly had, and acted with respect to, full knowledge and information as to prior and existing law . . . and the policy of the prior law." *Roberson*, 420 Md. at 667 (2011) (quoting *Maryland Div. of Labor and Indus. v. Triangle,* 366 Md. 407, 422 (2001)).

Another well-established principle of statutory construction requires that a more specific enactment governs a more general statute. *See Harvey v. Marshall*, 158 Md. App. 355 (2004); *Luberman's Mutual Casualty Co. Maryland Insurance Commissioner*, 302 Md. 248 (1985). In *Harvey*, the plaintiff was father to four children who resided with their respective mothers and for whom he paid child support to the City of Baltimore. During the time the children resided with their mothers, the father paid his child support but accrued some arrearages which he owed to the City. After the mother of three of the children were unable to continue caring for them, and the death of the other child's mother, all four came to live with him and he was granted custody by a court. *Id*. at 361. The father requested that his child support order be modified so that the deductions from his paycheck would cease and that his arrearage be forgiven so that he could use the money to raise the children now all under his care. *Id*. His attempts to have the arrearages forgiven were unsuccessful as the City asserted that pursuant to Maryland law it was unable to do so. *Id*. at 362. The circuit court agreed and the father appealed.

Before this Court, the father argued that Family Law Article §5-1038(b) permitted a court to modify or set aside a child support order if it was in the best interests of the children. *Id*. at 363. The City on the other hand, contended that Fam. Law §12-104 stated that a court may not modify a child support award retroactively prior to the date the motion for modification was filed. *Id*. Acknowledging that these two provisions competed with each other, we applied the rules of statutory construction to conclude that Fam. Law. §12-104 controlled and prohibited the court from retroactively modifying the order. *Id*. "[W]hen construing two statutes that involve the same subject matter, a harmonious

interpretation of the statutes is 'strongly favor[ed]. . . where two enactments – one general, the other specific – appear to cover the same subject, the specific enactment applies.'" *Id.* at 364-65. Applying this rule, and considering the statute in context of his legislative history, we held that Fam. Law §5-1038 was more general than Fam. Law §12-104 and accordingly, the latter controlled the situation. *Id.* at 371. We also noted: "we do not rely solely on the *specific v. general* distinction to interpret these statutes. In addition to Fam. Law §12-104(b) being the more specific enactment, it is also the later enactment. Family Law Article § 12-104 was enacted in 1988, at a time when FL section 5-1038(b) had long been in existence." *Id.* at 372.

In the case at bar, we hold that a dealer may charge and retain the electronic titling fee and not violate CLEC. We elaborate. The legislative history of CLEC, post-*Biggus*, reflects that the General Assembly intended that CLEC exclusively govern when being posed with other credit transaction statutes. While LSI did elect to have CLEC govern the transaction, this does not render other non-credit transaction Maryland laws inapplicable. Consequently, the requirements of statutes in other Articles of the Maryland Code could apply to a CLEC transaction. Between Com. Law §12-1005(d) and Transp. §13-610, the latter is the more specific of the two. CLEC generally prohibits the charging and collection of fees. Transp. §13-610 authorizes the collection of a fee for the service of electronically registering a purchased vehicle. While CLEC generally refers to "reasonable fees", the Transportation Article specifically refers to the fee associated with electronic registration. Furthermore, Transp. §13-610 is the more recent of the two, and as Maryland Courts have repeatedly acknowledged, a more recent statute takes precedence over an earlier enacted

one in situations of conflict. CLEC was enacted in 1983 and the language of Com. Law §12-1005 has remained essentially the same since then. The electronic titling fee, Transp. §13-610 was enacted a decade later. The new statute was "[for] the purpose of authorizing a licensed vehicle dealer to issue permanent registration plates to the transferee of a vehicle if the dealer electronically transmits certain required information to the Motor Vehicle Administration; [and] authorizing a dealer to charge a fee to cover the actual cost of the electronic information transmission service." 1993 Maryland Laws Ch. 630 (H.B. 740). It was intended to benefit all parties involved in an automobile purchase or transfer, including the buyer, the dealer, and the MVA. The General Assembly had recently amended CLEC in response to *Biggus*. If it desired to prohibit the new fee authorized by Transp. §13-610, it could have done so.

Our conclusion that, as an exception to Com. Law §12-1005(d), the electronic titling fee may be collected and retained by a dealer, is also consistent with prior interpretations of this issue by the Attorney General's office. In a letter dated April 18, 1995, the Attorney General's office issued an informal advisory letter in response to an inquiry on this exact issue.[7] Counsel had requested whether a dealer could collect the electronic titling fee lawfully under either RISA and/or CLEC, and if the fee could be financed along with the

---

[7] Although we do not accord precedential value to informal advisory letters from the Attorney General's Office, the background they provide and their reasoning can inform the Court's analysis. The Court of Appeals has previously referenced and quoted from informal advisory letters in deciding issues, not for their precedential or persuasive value, but rather because they were helpful in understanding the issues before the Court. *See Pub. Serv. Comm'n of Maryland v. Wilson*, 389 Md. 27, 57 (2005); *Doe v. Roe*, 419 Md. 687 (2011). We shall do likewise.

purchase price. The Attorney General's Office concluded that under both Acts, based on the legislative history and rules of statutory construction, a dealer could lawfully collect the fee, including instances when it was a financed transaction. Specifically regarding CLEC and the electronic titling fee, the letter stated:

> The most logical way to harmonize these two statutes is to read the specific authorization in [Transp.] §13-610 as a small exception to the prohibition in [Com. Law] 12-1005 against all "retained" fees. This does the least violence to both statutes. The alternative would be to read [Transp.] §13-610 as only applying to the cash sale transactions. There does not seem to be any discernable reason to conclude that the General Assembly intended this result, given the fact that there is no difference in the process of titling and registering vehicles the purchase of which is financed by the selling dealer as opposed to being paid for cash.[]

In summary, based on the principles of statutory construction and the legislative history of CLEC, we hold that a licensed dealer may charge and retain the electronic titling fee in financed sales governed by CLEC.

## 2. Excise Tax Allowance

As explained previously, under Transp. §13-809, all dealers in Maryland are required to collect excise taxes upon sale of a vehicle. There is no dispute that in this case, the applicable excise tax is authorized by Transp. §13-809:

> (c)(1) Except as provided in subsection (b)(2) of this section, the tax imposed by this section is 6 percent of the fair market value of the vehicle.

In accordance with this statute, LSI collected $2,398.50, or 6% of the price of appellee's Lexus. Transp. §13-812 permits a tax allowance, which allows a dealer to keep either $24 or 1.2% of the gross excise tax, whichever is smallest.

Before the circuit court, and on appeal, LSI challenges appellee's standing to contest its retention of the excise tax allowance.  The crux of this argument is that appellee lacks standing because she sustained no injury. LSI maintains that regardless of whether LSI forwarded the entire $2,398.50 to the State or, as it did, forwarded $2,374.50 to the State and opted to retain $24, appellee was never entitled to any of the money.  Accordingly, LSI avers there can be no injury because she would have to pay the 6% excise tax regardless. We observe that appellee has standing because if in fact the retention of the $24 violates CLEC, she would be entitled to penalties proscribed by CLEC.  Consequently, she has standing to challenge the retention of the tax allowance.

Nonetheless, we conclude that the circuit court erred in finding that LSI could not retain the tax allowance.  Com. Law §12-1005 governs charges and fees.  Black's Law Dictionary defines a fee as "[a] charge or payment for labor or services, esp. professional services", and a charge as a "[p]rice, cost, or expense."  Black's Law Dictionary (10th ed. 2014).  A tax allowance is a portion of a tax that a party is permitted to maintain instead of forwarding to the state.[8]  The CLEC provision is not applicable to the excise tax allowance because it is not a fee or a charge under the meaning of CLEC.  As illustration, the electronic titling fee is a fee because a dealer can charge the buyer $20 that it would not have normally collected, and that the buyer would not otherwise have paid, in addition to the official fees associated with titling charged by the MVA.  To the contrary, the excise

---

[8] *Cf. Lane Const. Corp. v. Comptroller*, 228 Md. 90 (1962) (addressing a challenge to an excise tax imposed on pieces of construction equipment purchased outside the state. The opinion explains that the Comptroller permitted an allowance of 10% of the purchase price).

tax allowance is just that – an allowance.  The taxes were 6% of the cost of the vehicle.

Appellee, and other similarly situated buyers, are not charged any additional amount for

service of collecting taxes.  The State has granted dealers the benefit of retaining a small

portion of a tax.  But unlike other charges and fees, this is not an additional monetary

amount that appellee must supply.  Therefore, we hold that Com. Law §12-1005 does not

apply to the tax allowance because it is not a fee or a charge.  Accordingly, we shall remand

this case back to the circuit court to enter summary judgment in favor of LSI.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY IS REVERSED.  CASE REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  COSTS TO BE PAID BY APPELLEE.**