**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 24-1584**

_____

PAUL FRENCH, on his own behalf and on behalf of all others similarly situated,

Plaintiff − Appellant,

v.

21st MORTGAGE CORPORATION,

Defendant – Appellee.

_____

Appeal from the United States District Court for the District of Maryland, at Baltimore. George L. Russell, III, Chief District Judge.  (1:23-cv-03528-GLR)

_____

Submitted:  April 16, 2025                          Decided:  July 23, 2025

_____

Before DIAZ, Chief Judge, and GREGORY and AGEE, Circuit Judges.

_____

Affirmed by unpublished opinion.  Chief Judge Diaz wrote the opinion, in which Judge Gregory and Judge Agee joined.

_____

**ON BRIEF:** Cory L. Zajdel, Jeffrey C. Toppe, David M. Trojanowski, Z LAW, LLC, Timonium, Maryland, for Appellant.  Brian L. Moffet, Michael B. Brown, MILES & STOCKBRIDGE, PC, Baltimore, Maryland; Thomas W. Thagard, III, James C. Lester, S. Reeves Jordan, Nicolas H. Peck, MAYNARD NEXSEN PC, Birmingham, Alabama, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Chief Judge:

In connection with his purchase of a manufactured home in Maryland, Paul French obtained property insurance through 21st Mortgage Corporation.  He alleges that, under an arrangement with the underwriting insurer, 21st Mortgage kept a portion of the insurance premiums he paid as a commission.  French, on behalf of himself and others similarly situated, sued 21st Mortgage, arguing that this practice violates Maryland's Credit Grantor Closed End Credit Provisions ("CLEC"), Md. Code Ann., Com. Law §§ 12-1001 to -1030.

The district court granted 21st Mortgage's motion for judgment on the pleadings, concluding that the commission was not a "fee" within the meaning of the CLEC and that 21st Mortgage did not violate the CLEC by retaining it.  We agree and therefore affirm.

I.

As we're reviewing the district court's decision granting judgment on the pleadings, we take as true all well-pleaded facts in French's complaint and draw all reasonable inferences in his favor.  *Pulte Home Corp. v. Montgomery County*, 909 F.3d 685, 691 (4th Cir. 2018).

A.

In June 2021, French purchased a manufactured home[1] and a piece of land in Maryland with a $55,000 loan from 21st Mortgage Corporation.  The loan agreement was

---

[1] A manufactured home is a factory-built dwelling of at least 320 square feet with a permanent chassis that allows it to be transported.  42 U.S.C. § 5402(6).  Though

governed by the CLEC.  And it required French to maintain property insurance, which he could get "from anyone authorized by law to sell it."  J.A. 40.

French chose to obtain property insurance through 21st Mortgage.  He renewed his policy twice.  American Bankers Insurance Company of Florida was the underwriting insurer for each policy.

French paid his insurance premiums directly to 21st Mortgage.  Under an agreement between 21st Mortgage and American Bankers, 21st Mortgage kept thirty-five percent of the premiums as a commission for placing the insurance policies.  21st Mortgage sent the remainder to American Bankers.[2]

## B.

French filed a putative class action against 21st Mortgage in Maryland state court. The action challenged 21st Mortgage's practice of retaining a portion of the insurance premiums it collected.  French claimed that the commission retained by 21st Mortgage was

---

"manufactured homes" are distinct from "mobile homes," the terms are often used interchangeably.

[2] 21st Mortgage alleges in its answer that "it received a 35% commission from the insurer for the placement of [French]'s insurance policies."  J.A. 23.  But, for the purpose of resolving a motion for judgment on the pleadings, we accept the allegation in French's complaint that 21st Mortgage retained a portion of the premiums as a commission, rather than receiving the commission from American Bankers.

3

a fee prohibited by the CLEC. He sought damages and injunctive and declaratory relief for the violation of the CLEC and for breach of contract.[3]

21st Mortgage removed the action to federal court. It then moved for judgment on the pleadings, denying that it retained a fee in violation of the CLEC.

The district court granted the motion. It found that 21st Mortgage didn't violate the CLEC because, under Maryland courts' interpretation of the statute, 21st Mortgage's "commission is not a fee or charge to French." *French v. 21st Mortg. Corp.*, No. GLR-23-3528, 2024 WL 2881260, at *5 (D. Md. June 7, 2024). The district court was likewise unpersuaded by French's arguments about the CLEC's legislative history. *Id.* And it rejected French's argument that the CLEC (which, in French's view, prohibits commissions for placing an insurance policy) should control over the conflicting provisions of the Maryland Code's Insurance Article (which permit such commissions). *Id.* at *6. The district court determined that the two statutes "can easily be read in harmony" and found that the Insurance Article, not the CLEC, governed the commission. *Id.*

---

[3] French's (curious) contract claim turns on his statutory one: Because the loan agreement elected to be governed by the CLEC, French says that when 21st Mortgage (allegedly) violated the CLEC, it also breached the loan agreement.

4

II.

The only issue raised on appeal is whether 21st Mortgage violated the CLEC by retaining a portion of the insurance premiums.[4]

We review de novo a district court's decision on a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and apply the same standard that governs our review of a motion to dismiss under Rule 12(b)(6).[5] *Pulte Home Corp.*, 909 F.3d at 691. Judgment on the pleadings is appropriate if—after "accept[ing] all well-pleaded allegations" in French's complaint as true and "draw[ing] all reasonable factual inferences in his favor"—French's complaint fails to state "a plausible claim for relief." *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014).

A.

"Credit grantors doing business in Maryland may opt to make a loan governed by [the] CLEC," as 21st Mortgage did here. *Askew v. HRFC, LLC*, 810 F.3d 263, 266 (4th Cir. 2016). The CLEC permits a credit grantor to "charge and collect . . . [r]easonable fees for services rendered or for reimbursement of expenses incurred in good faith by the credit grantor or its agents in connection with the loan, including . . . [p]remiums or other charges

---

[4] The parties conceded before the district court that this issue is dispositive of all of French's claims. *French*, 2024 WL 2881260, at *3.

[5] 21st Mortgage attached the loan agreement and insurance policies to its motion for judgment on the pleadings. We may consider these documents because they're "attached to [21st Mortgage's Rule 12(c)] motion"; are "clearly integral to, and [were] relied upon, in [French]'s complaint"; and French "does not dispute [their] authenticity." *See Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006); *see also Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014).

5

for any . . . insurance protecting the credit grantor against the borrower's default or other credit loss." Com. Law § 12-1005(b), (b)(3).

But the CLEC imposes additional restrictions on the fees a credit grantor can charge and collect from "a consumer borrower." *Id.* § 12-1005(d)(1). As relevant here, the fee must be "an actual and verifiable expense of the credit grantor not retained by him." *Id.* § 12-1005(d)(1), (d)(1)(ii).

French argues that the plain language of section 12-1005(d)(1) prohibits a credit grantor from retaining a portion of insurance premiums. Appellant's Br. at 14–15. He further contends that the legislative histories of the CLEC and of Maryland's interest and usury statute confirm that interpretation. *Id.* at 17–22. Finally, he asserts that the CLEC conflicts with the Maryland Code's Insurance Article (which allows the type of commission paid here), and the CLEC—as the more recent and more specific statute— governs. *Id.* at 27–28.

We reject these arguments and so affirm the district court's judgment.

## B.

We first turn to French's central argument that 21st Mortgage violated section 12-1005(d)(1) of the CLEC. It didn't.

French asserts that 21st Mortgage violated the CLEC because 21st Mortgage, as the credit grantor, could not retain any portion of an insurance premium. Appellant's Br. at 17. 21st Mortgage responds that because it didn't charge French any more than the insurance premium set by American Bankers, the commission wasn't a "fee" within the meaning of the CLEC. Appellee's Br. at 9.

6

The district court sided with 21st Mortgage "[b]ased on a plain reading of the language of CLEC." *French*, 2024 WL 2881260, at *5. It reasoned that the commission was not a "fee" within the meaning of the CLEC because French didn't pay more than the insurance premium rate filed with and approved by Maryland regulators. *Id.* And because the portion of the insurance premium that 21st Mortgage retained as a commission wasn't a fee, the CLEC didn't bar 21st Mortgage from retaining it. *Id.* We agree.

Under section 12-1005(d)(1) of the CLEC, a credit grantor (like 21st Mortgage) can't charge a consumer borrower (like French) "*a fee*" unless that fee is "an actual and verifiable expense of the credit grantor *not retained by him*." Com. Law § 12-1005(d)(1), (d)(1)(ii) (emphases added). But if the commission isn't a "fee," 21st Mortgage doesn't violate the CLEC by "retain[ing]" it.

The CLEC doesn't define "fee," and Maryland's highest court has yet to interpret the term. In the absence of such guidance, we generally defer to the decisions of Maryland's intermediate appellate court. *Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir. 1998). We may refuse to follow the intermediate appellate court's decision "only if [that] decision . . . cannot be reconciled with state statutes, or decisions of the state's highest court, or both." *Id.* at 1003.

In *Len Stoler, Inc. v. Wisner*, 115 A.3d 720 (Md. Ct. Spec. App. 2015), the Court of Special Appeals of Maryland defined a fee as "[a] charge or payment for labor or services, [especially] professional services." *Id.* at 732 (quoting *Fee*, Black's Law Dictionary (10th ed. 2014)). In other words, according to that court, a fee is an amount that the credit grantor

7

"would not have normally collected, and that the [borrower] would not otherwise have paid" for the service. *Id.*

There, a car buyer sued a car dealer, alleging—as relevant here—that the dealer violated the CLEC by retaining a portion of the excise tax the buyer owed to the state. *Id.* at 722, 727. Maryland law required the dealer to collect the tax from the buyer upon the sale of a vehicle and allowed the dealer to keep a portion of the gross tax as a "tax allowance." *Id.* at 727.

The *Len Stoler* court held that the retained tax allowance wasn't a "fee" under the CLEC because the tax allowance didn't change the amount of excise tax due to the state from the sale of the vehicle.[6] *Id.* at 732.

Here, the insurance premiums French paid to 21st Mortgage were the rates set by American Bankers and filed with and approved by Maryland regulators. *French*, 2024 WL 2881260, at *5 (citing Md. Code Ann., Ins. §§ 11-206, -213); Reply Br. at 20.

And just as the tax allowance retained from the excise tax wasn't a fee in *Len Stoler*, the commissions retained from the insurance premiums here are not fees either. Just as the plaintiff in *Len Stoler* didn't pay more than the excise tax due, French didn't pay any additional charge on top of his insurance premiums for the commission retained by 21st Mortgage. So the commission isn't a "fee" under the CLEC.

---

[6] The *Len Stoler* court contrasted the tax allowance with an electronic titling fee, which it concluded was a "fee" under the CLEC. 115 A.3d at 731. The electronic titling fee (unlike the allowance) was an additional amount that a car dealer charged in exchange for the electronic titling service "in addition to the official fees associated with titling charged by the [Maryland Motor Vehicle Administration]." *Id.* at 732.

8

Though French resists this conclusion, he doesn't contend that he was charged an additional amount for the commission. Nor does he assert that *Len Stoler* is irreconcilable with the CLEC or decisions from Maryland's highest court. *See Assicurazioni Generali*, 160 F.3d at 1003. Thus, we defer to the state intermediate appellate court's interpretation of the CLEC in *Len Stoler* and conclude that the commission retained here was not a "fee."

French's other arguments in support of his interpretation don't persuade.

In his reply brief, French argues that the commission in this case isn't like the tax allowance in *Len Stoler* because an insurance premium is not a fixed amount, like (in his view) an excise tax, leaving room for unscrupulous conduct. Reply Br. at 20–21. But nothing in *Len Stoler*'s analysis turned on whether the excise tax was a fixed amount.

French also relies on two decisions from Maryland's highest court that, in his view, establish that Maryland's interest and usury statute bars a lender from "retaining any portion of an insurance premium." Appellant's Br. at 24–26 (discussing *B.F. Saul Co. v. W. End Park N., Inc.*, 246 A.2d 591 (Md. 1968), and *Equitable Life Assurance Soc'y of the U.S. v. Ins. Comm'r*, 246 A.2d 604 (Md. 1968)). Because the interest and usury statute has similar language to the CLEC, French argues that we should extend the court's interpretation of that statute to the CLEC. Reply Br. at 14.

We decline the invitation. French's cases interpret Maryland's interest and usury statute, not the CLEC. They were decided fifteen years before the CLEC was enacted. And they don't cast doubt on *Len Stoler* and its interpretation of the CLEC. So we won't follow them here.

Therefore, we conclude that the portion of French's insurance premiums that 21st Mortgage retained as a commission was not a "fee" under the CLEC.

C.

We briefly address French's remaining arguments. They too are unavailing.

First, French focuses on the "not retained by him" portion of section 12-1005(d)(1). He contends that, by amending earlier bill language to add "not retained by him" into what is now section 12-1005(d)(1), Maryland's General Assembly intended to prohibit credit grantors like 21st Mortgage from keeping a portion of insurance premiums. Appellant's Br. at 19. 21st Mortgage responds that this addition doesn't support French's interpretation of the CLEC. Appellee's Br. at 19–20.

The district court determined that the CLEC's "not retained by him" language was irrelevant because it "does not change the fact that the section only governs 'fees' to consumer borrowers, and the commission on the insurance premium . . . is not a fee or charge to the consumer borrower." *French*, 2024 WL 2881260, at *5. We agree.

Maryland courts' interpretation of the term "fee" in the CLEC is clear. And the commission here isn't a fee. So even accepting French's allegation that 21st Mortgage "retained" the commission (as we must at this stage in the proceedings), 21st Mortgage didn't violate section 12-1005(d)(1) of the CLEC by retaining something that's not a "fee."

Next, French argues that the CLEC conflicts with Maryland's Insurance Article, and, because it's more recent and more specific, the CLEC controls. Appellant's Br. at 27. 21st Mortgage says that the two statutes don't conflict and that the Insurance Article, not the CLEC, governs the commission. Appellee's Br. at 25.

10

The district court found that the two statutes "can easily be read in harmony": the Insurance Article governs 21st Mortgage's commission, and the CLEC doesn't prohibit the commission. *French*, 2024 WL 2881260, at *6.

We decline to reach that question today. Simply put, the commission isn't a fee covered by the CLEC. So the CLEC and the Insurance Article couldn't conflict here because the CLEC doesn't apply to 21st Mortgage's commission.

III.

Because we conclude that 21st Mortgage did not violate the CLEC by retaining a portion of French's insurance premiums as a commission, we affirm. We dispense with oral argument because the facts and legal contentions are sufficiently presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

11