*Nina Bolling v. Bay Country Consumer Finance, Inc.*
No. 699, Sept. Term, 2019
Opinion by Leahy, J.

**Commercial Law > Credit Grantor Closed End Credit Provisions > Cause of Action under Maryland Code, Commercial Law Article ("CL") § 12-1018 > Accrual**

Under the plain meaning of CLEC, taken as a whole, we conclude that a cause of action may accrue after a violation has occurred where the borrower can show that she has suffered compensable damage under CLEC, subject to the credit grantor's right to cure pursuant to Maryland Code, Commercial Law Article ("CL") §§ 12-1018(a)(3) and 12-1020, or where the borrower requests appropriate declaratory or injunctive relief.

**Statutory Interpretation > Legislative History > *In Pari Materia***

As our review of the legislative history shows, CL § 12-1018 was originally enacted to be "identical as to penalty" as CL § 12-413 of the Secondary Mortgage Loan Law. It is a general rule of statutory construction that "statutes dealing with the same subject matter, sharing a common purpose, and forming part of a similar system may be construed *in pari materia* to give the full effect to each statute." *Doe v. Md. State Bd. of Elections*, 428 Md. 596, 615 (2012). The statutes "must be interpreted with reference to one another and harmonized to the extent reasonably possible." *Farmers & Merchants Nat. Bank of Hagerstown v. Schlossberg*, 306 Md. 48, 56 (1986).

**Commercial Law > Credit Grantor Closed End Credit Provisions > Cause of Action under CL § 12-1018 > Accrual**

CL § 12-1018 was designed to provide "protections for consumer borrowers, as well as penalties for lenders who violated those provisions." *Patton v. Wells Fargo Fin. Md., Inc.*, 437 Md. 83, 105 (2014). The "evil" in this context is the failure of credit grantors to follow the dictates of CLEC, and the "remedy" for such a violation is primarily the prohibition from collecting "any interest, costs, fees, or other charges with respect to the loan." CL § 12-1018(a)(2). It protects a borrower from a credit grantor's unbridled violation of CLEC. We, accordingly, hold that CL § 12-1018 is remedial in nature.

**Commercial Law > Credit Grantor Closed End Credit Provisions > Cause of Action under CL § 12-1018 > Accrual**

We disagree with the circuit court's conclusion that Ms. Bolling's claim for relief under CL § 12-1018(a)(2) failed because that statute limits the borrower's relief under CLEC to payments made in excess of the principal amount of the loan, as articulated in the string of federal cases tracing back to *Bediako v. American Honda Finance Corp.*, 537 F. App'x 183 (4th Cir. 2013).

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 699

September Term, 2019

_____

NINA BOLLING

v.

BAY COUNTRY CONSUMER FINANCE, INC.

_____

Meredith,*
Leahy,
Shaw Geter,

JJ.

_____

Opinion by Leahy, J.

_____

Filed: July 1, 2021

*Meredith, Timothy E., J., now retired, participated in the hearing of this case while an active member of this Court, and, after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the preparation of this opinion.

Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In this appeal, although we affirm the circuit court's dismissal of the underlying case, we clarify that a consumer borrower may maintain a cause of action against a credit grantor under the Credit Grantor Closed End Credit Provisions ("CLEC"), Maryland Code (1975, 2013 Repl. Vol., 2019 Supp.), Commercial Law Article ("CL"), §§ 12-1001-12-1029, before the credit grantor has collected more than the principal amount of the loan.

Appellant Nina Bolling appeals from an order of the Circuit Court for Baltimore City granting the motion to dismiss Count I of the complaint that she filed against appellee Bay Country Consumer Finance, Inc. ("Bay Country"). The court dismissed Ms. Bolling's CLEC claim on the ground that she was not entitled to relief as a matter of law because the complaint failed to state a "claim for any amounts in excess of the principal amount" of the loan. We hold that a borrower may bring a claim under CLEC against a credit grantor before the credit grantor has collected more than the principal amount on the loan. To properly state a cause of action for a violation of CLEC, however, a plaintiff must allege actual damages emanating from a violation of the statute or request appropriate declaratory or injunctive relief. Ms. Bolling alleged a violation of CLEC, but she sought neither declaratory nor injunctive relief. She also failed to articulate how she suffered any actual damages, nor did she claim that she paid Bay Country any amount in excess of the principal under CL § 12-1018(a)(2). Accordingly, we affirm the judgment of the circuit court dismissing Count I of Ms. Bolling's complaint for failure to state a claim.

## BACKGROUND[1]

On or about December 4, 2014, Ms. Bolling entered into a loan agreement ("Agreement") with Bay Country, which elected CLEC as the governing law.

### Complaint

On June 13, 2018, Ms. Bolling filed a complaint against Bay Country. Under the heading "Factual Allegations," Ms. Bolling included the following paragraphs which we present verbatim:

7. On or about December 4, 2014, [Ms.] Bolling entered into a credit contract with [Bay Country].

8. The credit contract between [Ms.] Bolling and [Bay Country] elected *Maryland's Credit Grantor Closed End Credit Provisions . . .* ("CLEC") as the governing law.

9. [Ms.] Bolling obtained financing primarily for personal, family and household purposes.

10. [Bay Country] took a security interest in [Ms.] Bolling's tangible personal property in the credit contract.

11. Throughout the life of the credit contract, [Ms.] Bolling made numerous payments to [Bay Country].

12. Throughout the life of the credit contract, [Bay Country] applied [Ms.] Bolling's payments toward interest, costs, fees and principal.

13. On or around January 12, 2017, [Bay Country] repossessed [Ms.] Bolling's tangible personal property in Baltimore City, Maryland.

---

[1] Because this appeal is from the grant of a motion to dismiss for failure to state a claim upon which relief can be granted, the "evidentiary background will 'assume the truth of all well-pleaded facts and allegations in the complaint.'" *Bel Air Carpet, Inc. v. Korey Homes Bldg. Grp., LLC*, 249 Md. App. 109, 115 n.4 (2021) (quoting *Lloyd v. Gen. Motors Corp.,* 397 Md. 108, 121 (2007)).

14. On March 1, 2018, [Ms.] Bolling requested from [Bay Country] all records memorializing [Ms.] Bolling's account history including all debits and credits to her account and any monthly statements sent to [Ms.] Bolling and all other documents which refer to payments due or received.

15. [Bay Country] has specifically refused to provide [Ms.] Bolling with the written statement requested.

Ms. Bolling's initial complaint contained one cause of action: Bay Country "specifically refused to provide Ms. Bolling with the requested written statement" in violation of CL § 12-1025. Ms. Bolling alleged that "[Bay Country]'s refusal to provide the written statement with knowledge of the requested written statement subjects [Bay Country] to treble damages." The complaint requested that the circuit court "enter an order that [Bay Country] pay to [Ms. Bolling] the statutory penalties imposed by [CL] § 12-1018(a)(2) and (b)"; award "pre-judgment and post-judgment interest"; and "award such other relief as the court deems appropriate."

Bay Country moved to dismiss or, in the alternative, for summary judgment, on the grounds that venue was improper in Baltimore City and that the court lacked subject matter jurisdiction because the "[c]omplaint does not specifically allege damages and does not provide a calculation of damages." Ms. Bolling then filed her "First Amended Complaint" on July 30, 2018. Besides providing additional allegations relating to venue, the amended complaint also averred that "[a]fter the date of the repossession, [Bay Country] demanded money from Ms. Bolling in an amount not collectible under her credit contract." The amended complaint added a cause of action for a violation of the Maryland Consumer Debt Collection Act ("MCDCA"), Maryland Code (1975, 2013 Repl. Vol., 2019 Supp.),

3

Commercial Law Article, §§ 14-201-14-204, and, in a footnote in the prayer for relief, stated that Ms. Bolling's claim "totals . . . $35,000.00." Otherwise, the amended complaint was substantively identical to the initial complaint. Ms. Bolling did not allege in her amended complaint that Bay Country collected more than the principal loan amount.

**Motion to Dismiss**

Bay Country filed a motion to dismiss Ms. Bolling's first amended complaint or, in the alternative, for summary judgment, on August 14, 2018. Bay Country asserted that Ms. Bolling's complaint should be dismissed for four reasons:

> First, venue is not proper in Baltimore City. Second, [Ms. Bolling] is not entitled to monetary recovery under CLEC as a matter of law. Third, [Ms. Bolling] has failed to allege any fact sufficient to support a claim under the MCDCA. Fourth, this Complaint is duplicative of the same issues raised in a discovery dispute now pending in the United States District Court for the District of Maryland, Northern Division and, accordingly, [Bay Country] should not be required to defend the same subject matter in two forums simultaneously.

Under the second argument, Bay Country asserted that Ms. Bolling's "characterization of the damages sought as a 'statutory penalty' is incorrect. 'CLEC does not provide for any fixed statutory damages beyond the plaintiff's actual loss.'" (Quoting *Bediako v. Am. Honda Fin. Corp.*, 537 F. App'x 183, 186-87 (4th Cir. 2013)). Relying on *Bediako* and *Gardner v. GMAC, Inc.*, 796 F.3d 390 (4th Cir. 2015), Bay Country posited that, because Ms. Bolling failed to allege that she paid amounts in excess of the principal,[2] she did not assert a proper claim under CLEC.

---

[2] According to the Affidavit of David Danlag, Senior Vice President of Bay

(Continued)

4

Ms. Bolling filed an opposition in which she averred that "CLEC damages are available regardless of whether a credit grantor has collected more than [the] principal amount of the loan." Relying on cases primarily interpreting the Secondary Mortgage Loan Law ("SMLL"), Maryland Code (1975, 2013 Repl. Vol., 2019 Supp.), Commercial Law Article, § 12-413, she contended that the circuit court was "actually bound by an unbroken line of controlling Maryland Appellate Court opinions dating back thirty five (35) years" directly contrary to *Bediako*. Ms. Bolling asserted that, "[t]he relief that is provided by CLEC § 12-1018 has also already been determined by Maryland Appellate Courts and includes monetary, equitable and declaratory relief[,]" citing *Chevy Chase Bank, F.S.B. v. Chaires*, 350 Md. 716 (1998); *Crowder v. Master Financial, Inc.*, 176 Md. App. 631 (2007); *Coner v. Morris S. Berman Unlimited, Inc.*, 65 Md. App. 514 (1985); and *Duckworth v. Bernstein*, 55 Md. App. 710 (1983). Ms. Bolling pointed out that Maryland

---

Country:

> The principal amount of the loan was $6,307.78. The Agreement provided, in part, for [Ms. Bolling's] motor vehicle to serve as collateral, and, accordingly, Bay Country perfected a second lien on the motor vehicle. Thereafter, [Ms. Bolling] defaulted on the loan and her vehicle was repossessed by Bay Country. The first lien on [Ms. Bolling's] vehicle was purchased by and assigned to C&F Finance Company []. Shortly after Bay Country repossessed the [v]ehicle on January 12, 2017, C&F demanded its return. On January 27, 2017, Bay Country released the [v]ehicle to C&F.
>
> [Ms. Bolling] has paid a total of $6,079.68 to Bay Country in connection with the loan at issue.

Mr. Danlag's affidavit was attached to the motion as Exhibit 1, but was not referred to in the circuit court's "Order Granting in Part and Denying in Part Defendant's Motion to Dismiss First Amended Complaint." We merely reference it here to provide additional context to the dispute.

Appellate cases, notably *Duckworth*, interpret SMLL to entitle a consumer to "declaratory and injunctive relief immediately upon the creditor's statutory violation," and urged the circuit court to interpret the same language found in CLEC in the same manner. "Unquestionably then, a credit grantor does not have to collect greater than the principal amount of the loan in order for a consumer to state a claim for relief under CLEC."

On September 19, 2019, the circuit court held a hearing on Bay Country's motion to dismiss. First, the court determined that venue is proper in the Circuit Court for Baltimore City. Then, the court heard argument on the CLEC claim. Counsel for Bay Country asserted that Ms. Bolling was not entitled to damages under CLEC as a matter of law because she had not paid more than the principal amount. The court inquired whether Ms. Bolling's claim survived for "knowing violation[s]" under § 12-1018(b). Counsel responded that "the knowing violation only applies [] if the debtor, the plaintiff, has paid more than the principal."

Counsel for Ms. Bolling argued that, regardless of whether a knowing violation could be established, she was entitled to statutory damages immediately upon any violation of CLEC. Counsel presented the CLEC legislative history establishing that § 12-1018(a)(2) was derived from SMLL. Because CL § 12-1018(a)(2) and CL § 12-413 are "the exact same," Ms. Bolling's counsel argued that the circuit court should interpret CL § 12-1018 in the same manner.

Upon the conclusion of the parties' argument, the court took the matter under advisement to consider the legislative history.

On September 26, 2019, the circuit court entered an order granting Bay Country's motion to dismiss, in part, as to the CLEC claim. The court held, in relevant part, that, "relying on the plain language of the statute, [Ms. Bolling] [was] not entitled to relief under CLEC as a matter of law." The court found "the reasoning of the federal decisions persuasive and [did] not believe that there [wa]s any reason to depart from those holdings." The court denied Bay Country's motion to dismiss Count II, relating to the MCDCA. On May 24, 2019, Ms. Bolling voluntarily dismissed Count II of her complaint with prejudice, which disposed of the final count. Ms. Bolling noted a timely appeal to this Court and presents one question for our review:

> "Whether a consumer borrower is entitled to maintain a cause of action for the statutory penalties [prescribed] by CLEC § 12-1018(a)(2) for a violation of CLEC prior to a credit grantor collecting more than the principal loan amount[.]"

## STANDARD OF REVIEW

We review whether the circuit court erred in granting the motion to dismiss Count I for failure to state a claim under CL § 12-1018(a)(2) for legal correctness and without deference to the trial court. *Bel Air Carpet, Inc. v. Korey Homes Bldg. Grp., LLC*, 249 Md. App. 109, 124 (2021) (citing *Rounds v. Md.-Nat. Capital Park & Plan. Comm'n*, 441 Md. 621, 635 (2015). "The granting of a motion to dismiss is proper only if 'the allegations and permissible inferences, if true, would not afford relief to the plaintiff, i.e., the allegations do not state a cause of action.'" *Barclay v. Castruccio*, 469 Md. 368, 374 (2020) (quoting *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 121 (2007)). In so doing, we "assume the truth of all relevant and material facts that are well pleaded and all inferences which

7

can reasonably be drawn from those pleadings." *Id.* at 373 (citation omitted). "We will affirm the circuit court's judgment 'on any ground adequately shown by the record, even one upon which the circuit court has not relied or one that the parties have not raised.'" *D.L. v. Sheppard Pratt Health Sys., Inc.*, 465 Md. 339, 350 (2019) (quoting *Sutton v. FedFirst Fin. Corp.*, 226 Md. App. 46, 74 (2015)).

## DISCUSSION

## Causes of Action under CLEC

### A. Parties' Contentions

Ms. Bolling contends that the "unambiguous language of [CL] § 12-1018(a)(2)" supports her interpretation that she is entitled to seek redress immediately upon a violation of CLEC. Bay Country's interpretation, she avers, "require[s] a credit grantor to collect ***more than*** the principal loan amount ***prior to*** a CLEC action accruing," and effectively "cut[s] off access to the courts for consumers who have been affected by a CLEC violation since many consumers never get to the point where the credit grantor had collected more than the principal loan amount." (Emphasis in original.) She claims that in *Len Stoler, Inc. v. Wisner*, 223 Md. App. 218 (2015), this Court "previously determined that a consumer borrower has standing to seek relief . . . immediately after the CLEC violation" and "did not limit . . . the 'penalties [prescribed] by CLEC' in any way other than the need to allege a CLEC violation."

Ms. Bolling bolsters her argument by pointing out that the Court of Appeals, this Court, and the Maryland Commissioner of Financial Regulations have interpreted "virtually identical statutory penalty provisions" in SMLL to entitle a borrower to its

8

protections "***regardless of whether the lender collected more than the principal loan amount.***" (Emphasis in original). The relevant legislative history, she avers, demonstrates that the "statutory penalty provision[s] set forth in CLEC were 'copied from secondary mortgage law' and are 'identical as to penalty, as those now existing under the Maryland Secondary Mortgage Law.'" According to Ms. Bolling, there is no "rational basis to depart from this Court's prior holdings . . . under SMLL, especially where the General Assembly has confirmed that the statutory penalty provision at issue in this case . . . was taken directly from SMLL § 12-413."

Bay Country counters that "[t]he plain language of CLEC § 12-1018 is dispositive that a borrower cannot maintain a cause of action against a lender unless the lender collects in excess of the principal amount." Bay Country relies on decisions by the United States Court of Appeals for the Fourth Circuit and the Maryland federal district court interpreting CL § 12-1018(a)(2) and holding that a debtor's relief is limited to amounts paid in excess of the principal.

Bay Country also avers that the legal authority cited by Ms. Bolling is inapposite because CLEC and SMLL "have different goals, [and] they should not be read in tandem or be considered in *pari materia*." Further, Bay Country criticizes Ms. Bolling's reliance on *Patton v. Wells Fargo Financial Maryland, Inc.*, 437 Md. 83 (2014), and *Len Stoler, Inc. v. Wisner*, 223 Md. App. 218 (2015), because neither case addresses whether a cause of action accrues under CL § 12-1018 when a lender has not collected in excess of the principal loan amount.

9

Ms. Bolling rejoins with the charge that Bay Country's interpretation of the statute would allow lenders "to disobey the substantive provisions of CLEC with impunity, so long as the borrower does not pay more than the principal amount of the loan." The violation then is "of no consequence, and the borrower is without remedy."

## B.  CL § 12-1018(a)(2)

### 1.  Canons of Statutory Interpretation

To ascertain the meaning of a statute, we apply our customary rules of statutory construction. It is "well established that '[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature.'" *Espina v. Prince George's Cnty.*, 215 Md. App. 611, 630 (2013) (quoting *Lockshin v. Semsker*, 412 Md. 257, 274 (2010)), *aff'd sub nom. Espina v. Jackson*, 442 Md. 311 (2015)). In construing a statute:

> [W]e begin with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology. When the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia. Moreover, after determining a statute is ambiguous, we consider the common meaning and effect of statutory language in light of the objectives and purpose of the statute and Legislative intent.
> Even in instances when the language is unambiguous, it is useful to review legislative history of the statute to confirm that interpretation and to eliminate another version of legislative intent alleged to be latent in the language.
> \* \* \* \* \*
> In the event the language of a statute is ambiguous, we will often apply rules of statutory construction to ascertain the intent of the legislature. One such rule is to read the language of a statute in such a way that will carry out its object and purpose. This Court will also consider the consequences

resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense.

*Blackstone v. Sharma*, 461 Md. 87, 113-14 (2018) (cleaned up).  In addition to these well-established canons, we liberally construe a remedial statute to effectuate its broad remedial purpose, *Lockett v. Blue Ocean Bristol, LLC*, 446 Md. 397, 424 (2016), and construe statutes dealing with the same subject matter "*in pari materia* to give the full effect to each statute," *Doe v. Md. State Bd. of Elections*, 428 Md. 596, 615 (2012).  We begin, as always, with the statute and its plain language.

## 2. Statutory Scheme

Ms. Bolling alleged two potential violations of CLEC.  First, she alleged, without further factual detail or support, that "[a]fter the date of the repossession, [Bay Country] demanded money from Ms. Bolling in an amount not collectible under her credit contract."  Second, she averred a violation of CL § 12-1025 for Bay Country's refusal "to provide [Ms.] Bolling with the requested written statement" after Bay Country repossessed her personal property.  Section 12-1025(a) provides:

A credit grantor who receives scheduled monthly periodic payments on more than five loans secured by any interest in residential real property or tangible personal property shall furnish to the consumer borrower a written statement informing the consumer borrower of the amount of:

(1)  If the interest and charges on the loan were precomputed:
    (i)     Payments credited to reducing the outstanding unpaid balance of the loan, either in terms of a total dollar figure or individually itemized; and
    (ii)    The remaining outstanding unpaid balance of the loan; or

(2)  If the interest and charges on the loan were not precomputed:
    (i)     Payments credited to reducing the outstanding unpaid principal

11

balance of the loan, either in terms of a total dollar figure or individually itemized;

    (ii)    Payments credited to interest and fees, either in terms of a total dollar figure or individually itemized; and

    (iii)    The remaining outstanding unpaid principal balance of the loan.

Further, in the case of loans secured by "tangible personal property," § 12-1025(c) requires that a "written statement [be] furnished to the consumer borrower: . . . within a reasonable time after receipt of a written request of a consumer borrower provided the request is made at a reasonable time or interval since the furnishing of the last written statement."  CL § 12-1025(c).

Section 12-1018 of CLEC addresses the civil penalties for a violation of CLEC:

(a)(1)  In this subsection, "notice" means the first to occur of the following:

    (i)    When the credit grantor receives a written notice from the borrower notifying the credit grantor of an error or violation;

    (ii)    When the credit grantor receives a written notice from the Commissioner of Financial Regulation or the appropriate regulatory authority notifying the credit grantor of an error or violation; or

    (iii)    When the credit grantor receives service of process in a civil action for an error or violation instituted by the borrower in a court of competent jurisdiction.

(2) **Except for a bona fide error of computation, if a credit grantor violates any provision of this subtitle the credit grantor may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan.**

(3) The penalty provided under paragraph (2) of this subsection does not apply where a credit grantor:

    (i)    Unintentionally and in good faith fails to comply with § 12-1003, § 12-1004, § 12-1005, § 12-1008, § 12-1011, § 12-1013.2, § 12-1023(d), § 12-1024, § 12-1025, § 12-1026, § 12-1027, or § 12-1028 of this subtitle; and

    (ii)    Corrects the error or violation and makes the borrower whole for all losses, including reasonable attorney's fees and interest,

12

> where appropriate, within 10 days after the credit grantor receives notice of the error or violation.
>
> (4) The burden shall be on the credit grantor to show that the credit grantor's failure to comply with § 12-1003, § 12-1004, § 12-1005, § 12-1008, § 12-1011, § 12-1013.2, § 12-1023(d), § 12-1024, § 12-1025, § 12-1026, § 12-1027, or § 12-1028 of this subtitle was unintentional and in good faith.
>
> (b) In addition, a credit grantor who knowingly violates any provision of this subtitle shall forfeit to the borrower 3 times the amount of interest, fees, and charges collected in excess of that authorized by this subtitle.

CL § 12-1018 (emphasis added). By its plain terms, § 12-1018(a)(2) specifies that a credit grantor that violates CLEC is authorized to collect from a debtor only "the principal amount of the loan." Section 12-1018(a)(2) thus sets forth a *post-violation limitation* on the *monetary amount* that a credit grantor may collect from the borrower. But in the case of a *knowing* violation, a credit grantor must pay the borrower "3 times the amount of interest, fees, and charges collected in excess of that authorized by this subtitle."[3]

---

[3] In cases involving repossessed vehicles, as in the underlying case, CL § 12-1021 sets out the requirements for repossession of tangible personal property by the credit grantor and, in the case of a "public sale," states, in pertinent part: "If the provisions of this section, including the requirement of furnishing a notice following repossession, are not followed, **the credit grantor shall not be entitled to any deficiency judgment to which he would be entitled under the loan agreement.**" CL § 12-1021(k)(4) (emphasis added). In the case of a "private sale," the statute provides that "[t]he Commissioner of Financial Regulation may make a determination concerning any private sale that the sale was not accomplished in a commercially reasonable manner. **Upon that determination, the Commissioner may enter an order disallowing any claim for a deficiency balance**." CL § 12-1021(j)(3) (emphasis added). *See also Gardner v. Ally Fin. Inc.*, 430 Md. 515, 528 (2013) (observing that "Senate Bill 839 was amended in committee to add the post-sale disclosure requirements for 'private sales' as part of 'consumer protection measures' to 'prevent private sales that are made to the detriment of the defaulting buyer/borrower.'"). Ms. Bolling does not mention CL § 12-1021 or invoke its provisions in her amended complaint.

13

In a series of cases interpreting CL § 12-1018, the United States Court of Appeals for the Fourth Circuit and the federal district court in Maryland held, based on their interpretation of the statute, that a debtor is not entitled to relief under CLEC until the debtor has paid more than the principal under the loan agreement. *See, e.g.*, *Gardner v. GMAC, Inc.*, 796 F.3d 390, 394 (4th Cir. 2015) (quoting *Bediako v. American Honda Fin. Corp.*, 537 F. App'x 183, 186 (4th Cir. 2013) (unpublished disposition));[4] *see also Campbell v. Toyota Motor Credit Corp.*, No. 8:18-cv-00150(PWG), 2018 WL 3439250, at *7 (D. Md. July 17, 2018) ("Section 12-1018(a)(2) merely stops a creditor's collection from the debtor beyond the principal amount of the loan. . . . In other words, this statute only protects consumers by halting a lender's collection efforts against the plaintiff once it has recovered the principal amount of the loan; it does not provide a basis for a plaintiff's recovery when the plaintiff herself has not paid more than the principal amount of the loan."). These cases reason that, regardless of whether a plaintiff has asserted a valid CLEC violation, if the plaintiff has not paid in excess of the principal, that plaintiff "'is unable to state a claim because she has suffered no actual damages that are compensable under CLEC.'" *Gardner*, 796 F.3d at 394 (quoting *Bediako*, 537 Fed. App'x at 188). In each case, the federal courts recharacterized the debtor's payments (including fees) as payments on the principal and then subtracted the total from the original principal amount

---

[4] Federal Rule of Appellate Procedure 32.1 allows the citation of unpublished opinions and other written dispositions, issued on or after January 1, 2007, designated as "unpublished."

of the loan.  *Bediako*, 537 F. App'x at 186 n.1; *Gardner*, 796 F.3d at 394. [5]

The federal cases further restrict equitable or declaratory relief for a violation of CLEC unless the plaintiff has paid more than the principal amount of the loan.  *See Bediako*, 537 F. App'x at 188; *Campbell*, 2018 WL 3439250, at *8 n.5.

We agree with the federal courts that, based on the plain meaning of CL § 12-1018(a)(2), "CLEC does not provide for any fixed statutory damages beyond the plaintiff's actual loss" and that the penalty prescribed under CL § 12-1018(a)(2) confines the credit grantor to collection of the principal amount of the loan, thereby forfeiting any outstanding interest, charges, costs and fees, where there is an unknowing violation.  *Bediako*, 537 F. App'x at 187.  However, as we next explain, under our interpretation of CLEC, a consumer borrower may have standing to bring a claim for damages and for declaratory and injunctive relief, immediately after the CLEC violation.  *Len Stoler, Inc. v. Wisner*, 223 Md. App. 218, 238 (2015).  We do not interpret CL § 12-1018(a)(2) to bar relief for a violation of CLEC until after the borrower pays off the principal amount of the loan; but rather, to limit the amount of damages that a credit lender has to pay—assuming the lender can prove it was not a knowing violation (CL § 12-1018(a)(2)). [6]

---

[5] The federal courts in *Campbell*, *Gardner*, and *Bediako* did not discuss the legislative history of CLEC or directly compare the provisions of SMLL with those of CLEC.  The federal courts also did not mention the relevant analysis and legislative history examined by the Court of Appeals in *Patton v. Wells Fargo Financial Maryland, Inc.*, 437 Md. 83 (2014).

[6] Practically speaking, it is difficult to imagine the imposition of money damages under CL § 12-1018 where the borrower has not paid the principal amount; however, it is conceivable that the forfeiture of interest penalty, CL § 12-1018(a)(2), may obtain under

(Continued)

15

It is axiomatic that the "'plain meaning' of a statute can only be assessed in the context in which it appears." *Patton v. Wells Fargo Fin. Md., Inc.*, 437 Md. 83, 96-97 (2014) (citation omitted). "We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope." *Lockshin v. Semsker*, 412 Md. 257, 276 (2010). In this regard, other provisions of CLEC clarify when CL § 12-1018(a)(2) is applicable and when declaratory or injunctive relief may be appropriate.

We start with CL § 12-1018(a)(3), which states that the "penalty provided under paragraph (2) of this subsection does not apply" if the credit grantor "[u]nintentionally and in good faith" failed to comply with certain provisions under CLEC and "[c]orrects the error or violation and makes the borrower whole for all losses, including reasonable attorney's fees and interest, where appropriate, within 10 days after the credit grantor receives notice of the error or violation." Under a separate section of the statute entitled "Limitation on credit grantor's liability," a credit grantor may self-correct a CLEC violation within 60 days:

> A credit grantor is not liable for any failure to comply with a provision of this subtitle if, within 60 days after discovering an error and prior to institution of an action under this subtitle or the receipt of written notice from the borrower, the credit grantor notifies the borrower of the error and makes whatever adjustments are necessary to correct the error.

---

such circumstances with respect to any outstanding payments due on the loan. A court may also order, under certain circumstances following repossession of a car, that "the credit grantor shall not be entitled to any deficiency judgment to which he would be entitled under the loan agreement" in accordance with the provisions of CL § 12-1021(k)(4).

16

CL § 12-1020. The foregoing provision encourages credit grantors to correct violations within 60 days of discovering an error and does not suggest that the lender can wait—or that the borrower must wait to institute an action—until after the lender has collected the principal amount of the loan.

Without the ability to obtain declaratory or injunctive relief under certain provisions of CLEC, a borrower may not have the ability to confirm whether a credit grantor is complying with certain provisions of CLEC. Examples include potential claims under CL § 12-1025(a), pursuant to which a credit grantor must provide a written statement to a borrower of the "[p]ayments credited to reducing the outstanding balance of the loan" and "[t]he remaining outstanding unpaid balance of the loan"; and CL § 12-1013.2, which requires the credit grantor to deliver a copy of the agreement or other evidence of the loan to the borrower. A borrower may well require compliance with these provisions of CLEC in order to determine, for example, whether a credit lender is violating other provisions that guard against excessive charges.

In construing CL § 12-1019, which imposes a statute of limitations for violations of CLEC, the Court of Appeals has instructed that CL § 12-1018(a)(2) does not require a borrower to pay excessive charges to "satisfy" the loan before obtaining relief under the CLEC statute. *Patton*, 437 Md. at 106-07. The statute provides that: "[a]n action for violation of this subtitle may not be brought more than 6 months after the loan is satisfied." CL § 12-1019. The Court of Appeals rejected an argument that the statute of limitations "applies only to a cause of action that accrues *after* the loan is satisfied[.]" *Patton*, 437 Md. at 106 (emphasis in original). The Court explained:

17

Under this reading of the statute, an action could be filed for a violation of CLEC only in the short window between satisfaction of the loan and a date six months later. **It would also mean that a borrower who was charged interest or fees in excess of those permitted by CLEC and who wished to bring an action to obtain relief under the statute from the excessive charges,** *see* **CL § 12-1018(a)(2), would first have to pay the excessive charges to "satisfy" the loan.** There is no support in the case law or legislative history for this odd interpretation of the statute. **It is well-established that a cause of action under the usury statute—the model for CL § 12-1019—remains available if the loan is not fully paid.** *See Brenner v. Pitt*, 182 Md. 348, 34 A.2d 853(1943).

*Patton*, 437 Md. at 106-07 (emphasis added). Likewise, in *Len Stoler, Inc.*, we observed, in dicta, that if an act—retaining a portion of a gross excise tax—"violates CLEC, [the plaintiff] would be entitled to penalties [prescribed] by CLEC." 223 Md. App. at 238. Ultimately, the plaintiff in *Len Stoler, Inc.* was not entitled to damages because the excise tax allowance was not a "fee or a charge under the meaning of CLEC." *Id.* at 238-39.

Under the plain meaning of CLEC, taken as a whole, we conclude that a cause of action may accrue after a violation has occurred where the borrower can show that she has suffered compensable damage under CLEC, subject to the credit grantor's right to cure pursuant to CL §§ 12-1018(a)(3) and 12-1020,[7] or where the borrower requests appropriate

---

[7] The General Assembly amended CL § 12-1018 of CLEC in 1990 to provide credit grantors a narrow right to cure certain violations to avoid forfeiture of their right to collect interest, costs, fees, or other charges. 1990 Md. Laws ch. 458 (S.B. 403). The General Assembly clarified that these amendments did not affect the borrower's right to file suit for a violation under CLEC but altered the credit grantor's potential liability for damages resulting from a violation. Senate Bill 403—Floor Report of Revolving and Closed End Credit—Corrections at 6, 8 (1990 General Assembly) in legislative file for Senate Bill 403.

declaratory or injunctive relief. [8]

The Court of Appeals has explained that our statutory analysis may end upon a determination that a statute's plain meaning is unambiguous:

> When the statutory language is clear, we need not look beyond the statutory language to determine the General Assembly's intent. If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written. . . . If there is no ambiguity in the language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends.

*Peterson v. State*, 467 Md. 713, 727 (2020). Alternatively, "[i]n other formulations, the Court has observed that '[w]hile not necessary in every instance, we often find it prudent to scrutinize the legislative history to confirm that our interpretation of the statute's plain language accords with the legislature's intent.'" *Daughtry v. Nadel*, 248 Md. App. 594, 613 (2020) (quoting *Berry v. Queen*, 469 Md. 674, 678-88 (2020)). Consistent with this direction, and given the contrary interpretation of the narrow issue on appeal by the federal courts, we exercise our discretion and turn to analyze the legislative history of CLEC.

---

[8] A borrower may file an action for a violation in a court of competent jurisdiction or file a written complaint with the Commissioner of Financial Regulation under CL § 12-1016. If the borrower elects the administrative path, the borrower is "precluded from raising or asserting against the credit grantor in any subsequent forum any claim, defense, setoff, recoupment, penalty for violation, or right of any kind based on the matters addressed in the complaint or the hearing." CL § 12-1016(b)(3)(i). After a hearing, the Commissioner "shall order the credit grantor to cease and desist from the act or practice" prohibited by CLEC and also "may direct a refund only up to the amount collected by the credit grantor from the complaining party that: 1. Exceeds the amount expressly permitted under this subtitle; or 2. The credit grantor is expressly not permitted to collect." CL § 12-1016(c)(2)(ii).

### 3. Legislative History

The General Assembly enacted CLEC in 1983 as part of "the 'Credit Deregulation Act' by Chapter 143 of the Laws of 1983, to entice creditors to do business in the State." *Ford Motor Credit Co. v. Roberson*, 420 Md. 649, 662 (2011). The Court of Appeals explained in *Biggus v. Ford Motor Credit Co.*, that CLEC was a response to problems in the banking industry:

> Prior to the 1983 session of the General Assembly, four Maryland banks transferred certain of their operations to Delaware where the banking laws were more favorable. These included the credit card operations of two major banks based in Baltimore. Some 1,000 jobs were lost in the Baltimore area. The response by the General Assembly was Chapter 143 of the Acts of 1983, the enactment of which was urged by then Mayor Schaefer of Baltimore and others. Chapter 143 has become known as the Credit Deregulation Act of 1983.
>
> Chapter 143 approached problems in the banking industry three ways. One approach dealt with the acquisition of stock in banks located in Maryland by out-of-state bank holding companies. These provisions are now codified as Md. Code (1980, 1992 Repl. Vol.), Title 5, Subtitle 9 of the Financial Institutions Article (FI). The second approach was CLEC. It was not subject to the July 1, 1985, sunset of the increase to twenty-four percent for the maximum interest rate. § 12-1003. Among its provisions, CLEC addressed variable rate loans (§ 12-1004), excluded up to two points in loan fees from the usury ceiling on residential mortgages (§ 12-1005(a)), and excluded from the usury ceiling "[r]easonable fees for services rendered or for reimbursement of expenses incurred in good faith" (§ 12-1005(b)). The third approach of Chapter 143 was the enactment of CL Title 12, Subtitle 9, "Credit Grantor Revolving Credit Provisions"—provisions relating to open end credit (OPEC)—that are companion to CLEC. OPEC, for example, addresses revolving loan credit secured by residential mortgages.

328 Md. 188, 197 (1992). Accordingly, "[w]hen it was introduced, the bill was viewed as primarily a deregulation effort to permit banks in Maryland to compete more effectively with banks in nearby states." *Patton v. Wells Fargo Fin. Md., Inc.*, 437 Md. 83, 105 (2014).

However, as the Court of Appeals further elucidated, the Attorney General and Governor had concerns that the bill introduced went "too far" in deregulating banks and proposed a series of amendments:

> The Attorney General opposed the bill in its original form, stating that '[t]he bill goes too far' in removing consumer protections and urged the Legislature to modify the bill. *See* Statement of Attorney General Stephen H. Sachs (February 25, 1983). The Attorney General and the Secretary of Licensing and Regulation urged the addition of protections for consumer borrowers, as well as penalties for lenders who violated those provisions. *See* Senate Economic Affairs Committee, Hearing Summary for Senate Bill 591 (1983); Letter of Eleanor M. Carey, Deputy Attorney General, to Delegate Frederick C. Rummage, Chairman of House Economic Matters Committee concerning Senate Bill 591 (March 28, 1983).
>
> Consistent with the positions of the Attorney General and the administration, the Governor's Office proposed a series of amendments to the bill. Among the proposed amendments were penalty provisions for lender violations of CLEC. *See* Senate Bill 591—Analysis of Proposed Administration Amendments (March 28, 1983) in legislative file for Senate Bill 591.

*Patton*, 437 Md. at 105-06. The Governor's Office clarified the rationale for its amendments:

> As originally drafted SB 591 provides no specific penalties, civil or criminal, for violations of any provisions of the new subtitles. It was felt that there should be specific penalties but not exceeding those provided under other Maryland lending laws. **These amendments would add new sections in both subtitles, identical as to penalty, as those now existing under the Maryland Secondary Mortgage Loan Law.**

*See* Senate Bill 591—Analysis of Proposed Administration Amendments (March 28, 1983) in legislative file for Senate Bill 591. Among the amendments proposed by the Administration, and ultimately adopted by the General Assembly, was Section 12-1018, which then provided:

> Except for a bona fide error of computation, if a credit grantor violates any provision of this subtitle, he may collect only the principal amount of the loan and may not collect any interest, costs, or other charges with respect to the loan. In addition, a credit grantor who knowingly violates any provision of this subtitle also shall forfeit to the borrower three times the amount of interest and charges collected in excess of that authorized by law.

In its original form, CL § 12-1018 mirrored CL § 12-413. The *only* difference between the provisions is that CL § 12-1018 referenced a "credit grantor," whereas CL § 12-413 referenced a "lender."

*1990 Amendments*

Seven years later, the General Assembly amended CLEC to "clarif[y] the rights of borrowers and credit grantors under Subtitles 9 and 10 of Commercial Law when errors are discovered in certain credit agreements." Senate Bill 403—Bill Analysis of Revolving and Closed End Credit—Corrections (1990 General Assembly) in legislative file for Senate Bill 403. Specifically, the General Assembly amended CL § 12-1018 to provide a right to "cure" certain violations of CLEC if (1) the violation was unintentional and in good faith; (2) within 10 days after receiving notice of the error or violation, the credit grantor corrects the error or violation; and (3) makes the borrower whole for all losses, including reasonable attorney's fees and interest. *Id.*

As the bill's sponsor, Senator O'Reilly, stated, the bill would provide a "very narrow right to cure certain violations of the Credit Deregulation Act in order to avoid the forfeiture of interest penalty." Senate Bill 403—Floor Report of Revolving and Closed End Credit—Corrections at 4 (1990 General Assembly) in legislative file for Senate Bill 403. The amendments were added to protect the lender from losing out on finance charges to a

22

customer who agreed to pay those charges and who may have had use of the retailer's funds for years.

The Floor Report clarified that these amendments would not affect "the consumer's right to file suit and seek damages . . . (even if the damages after a 'cure' are minimal)." The Floor Report concluded "[t]he important thing to remember is that the <u>consumer's right to sue the credit grantor is not affected by the credit grantor's right to cure</u>" nor does the bill "alter the current law as it relates to the credit grantor's liability for damages for <u>any violation</u>." *Id.* at 6, 8 (emphasis in original). Although other minor amendments to CL § 12-1018 have been enacted,[9] CL § 12-1018 has not been substantially altered from its form since the 1990 amendments.

---

[9] In 1992, the Court of Appeals decided *Biggus v. Ford Motor Credit Co.*, 328 Md. 188 (1992). There, the Court opined, in dicta, that where CLEC was silent, the provisions of the Retail Installment Sales Act ("RISA") could apply:

> Implicit in [the consumer's] argument that an effective election of CLEC is "mutually exclusive" of RISA is the concept that CLEC then becomes the only body of Maryland law that bears on any aspect of the transaction. That is correct as to any aspect, such as interest, disclosure, or repossession, as to which the Legislature manifested an intent that CLEC have that effect. But there are subjects regulated by RISA, by other Maryland statutes, and by common law, that are not addressed at all by CLEC. In other words, an election to extend credit under CLEC does not make RISA, or other Maryland law, entirely irrelevant to the credit transaction.

*Id.* at 208. In response, the General Assembly enacted Chapter 404 of the Maryland Laws of 1993, which meant to "clarify that, for any extension of credit made prior to October 1, 1993, so long as a credit grantor has specifically elected to be under [OPEC or CLEC] or can be construed to have extended credit under [OPEC or CLEC] (where there was no specific election), [OPEC or CLEC] is the controlling law governing the extension of credit and provisions of other law may not be read into the loan agreement." *Roberson*, 420 Md. at 666 n.13. The only substantive change to CL § 12-1018 was the addition of "fees" as an impermissible collection. 1993 Md. Laws ch. 404 (H.B. 424).

*In Pari Materia*

As our review of the legislative history shows, CL § 12-1018 was originally enacted to be "identical as to penalty" as CL § 12-413 of the Secondary Mortgage Loan Law. It is a general rule of statutory construction that "statutes dealing with the same subject matter, sharing a common purpose, and forming part of a similar system may be construed *in pari materia* to give the full effect to each statute." *Doe v. Md. State Bd. of Elections*, 428 Md. 596, 615 (2012). The statutes "must be interpreted with reference to one another and harmonized to the extent reasonably possible." *Farmers & Merchants Nat. Bank of Hagerstown v. Schlossberg*, 306 Md. 48, 56 (1986). "Characterizing the statutes' object or purpose is one of the more important methods for determining whether they are intimately enough connected to justify interpreting one statute in light of the other statute." *Doe*, 428 Md. at 615 (citing 2B Sutherland Statutory Construction § 51:3, at 222-31 (7th ed. 2012)). "The guiding principle . . . is that if it is natural and reasonable to think that the understanding of legislators or persons affected by a statute is influenced by another statute, then a court construing such an act also should allow its understanding to be similarly influenced." 2B Sutherland Statutory Construction § 51:3 (7th ed.), Westlaw (database updated November 2020).

The Court of Appeals has previously considered whether individual provisions in related statutes should be considered *in pari materia*. In *Henriquez v. Henriquez*, the Court of Appeals held that four separate provisions of the Maryland Code (1984, 2006 Repl. Vol.), Family Law Article, §§ 7-107, 8-214, 11-110, and 12-103, which permit an award for attorney's fees to a prevailing party, must be read in *pari materia*. 413 Md. 287, 305

24

(2010). While § 12-103 did "not contain language that provides for payment of attorney['']s fees directly to an attorney, as in Sections 7-107, 8-214, and 11-110[,]" to "do otherwise would foster the illogical result of permitting an award of fees directly to an attorney when a party prevails in a divorce proceeding on fault grounds, or when a party obtains a monetary award and could then pay the attorney, or when a party receives alimony, but not permitting an award of fees directly to an attorney in a determination of physical custody of children, in which each party 'has equal constitutional rights to parent' and at stake is the 'best interests' of the children." *Id.* at 306.

Likewise, in *Willis v. State*, the Court of Appeals, pursuant to the doctrine of *in pari materia*, harmonized the definition of "apprehended" in Maryland Code (1974, 1984 Repl. Vol.), Courts and Judicial Proceedings Article, § 10-303, regarding the ***timing*** of administering a blood alcohol test, and "detained" in Maryland Code (1977, 1981 Supp.), Transportation Article, § 16-205.1, concerning the ***procedure*** for administering a blood alcohol test. 302 Md. 363, 375-77 (1985). The Court held "that an accused is 'apprehended' when a police officer has reasonable grounds to believe that the person is or has been driving a motor vehicle while intoxicated or while under the influence of alcohol and the police officer reasonably acts upon that information by stopping or detaining the person." *Id.* at 376. The Court concluded that "[h]armonizing these statutory provisions in this manner avoids needless conflict between statutes having the same object: the identification and removal of drunk drivers from Maryland's highways." *Id.*

Returning to the present case, CLEC and SMLL not only relate to the same subject matter—the regulation of transactions between Maryland's consumers and

25

creditors/lenders—but the legislative history concerning CL § 12-1018 explicitly refers to "specific penalties but not exceeding those provided under other Maryland lending laws." Interpreting the penalty provisions under CLEC and SMLL differently would foster the illogical result that almost identical provisions within the same Title under the Commercial Law Article, both concerning lending, are interpreted differently. We reject Bay Country's contention that because CLEC and SMLL "have different goals" the penalty provisions "should not be read in tandem or be considered *in pari materia*." To the contrary, the legislative history relating to CL § 12-1018 reflects that the General Assembly chose identical consumer protections for borrowers precisely to provide borrowers the same recompense under related lending laws.

The inclusion of identical penalties for violations of CLEC and SMLL was not a haphazard choice by the General Assembly. Rather, the legislative history clarifies that the General Assembly intended violations under CLEC to be subject to the same penalties as violations under SMLL. Having determined that CL § 12-1018 and CL § 12-413 should be read *in pari materia*, we consider our cases analyzing CL § 12-413, given that our Courts have not had occasion to consider CL § 12-1018 in depth.

### 4. CL § 12-413

The penalty provision contained in SMLL, almost identical to section 12-1018 in the CLEC statute, provides:

> Except for a bona fide error of computation, if a lender violates any provision of this subtitle he may collect only the principal amount of the loan and may not collect any interest, costs, or other charges with respect to the loan. In addition, a lender who knowingly violates any provision of this subtitle also

26

shall forfeit to the borrower three times the amount of interest and charges collected in excess of that authorized by law.

CL § 12-413. As we explain, this Court has consistently interpreted CL § 12-413 to entitle a borrower to "seek declaratory relief with respect to any payments made within that same time period as well as with respect to any ongoing or future liability under the loans." *Crowder v. Master Fin., Inc.*, 176 Md. App. 631, 667 (2007), *aff'd in part, rev'd in part on other grounds,* 409 Md. 51 (2009).

In classifying CL § 12-413, we have characterized the "civil ramifications for a lender who violates the provisions of the SMLL [as] harsh":

> Even if the violation is unintentional, the lender is prevented from collecting any interest or other charges exacted [from] the borrower for the loan. Moreover, where the borrower can establish that the lender "knowingly" violated the SMLL provisions regulating the amount of interest and other charges imposed by the lender, the borrower may recover enhanced damages from the lender[.]"

*Id.* at 664 (quoting *Williams v. Standard Fed. Sav. & Loan Ass'n*, 76 Md. App. 452, 455 (1988)). Likewise, in *Duckworth v. Bernstein*, we highlighted the "protective purposes" of SMLL:

> It is a law intended to guard the foolish or unsophisticated borrower, who may be under severe financial pressure, from his own improvidence. The law achieves this beneficent purpose by penalizing even the unwitting violator, to the extent of limiting him to recovery of the principal amount of the loan. This is consistent with the strong Maryland policy against usury. *See Plitt v. Kaufman*, 188 Md. 606, 612, 53 A.2d 673 (1946). It is also consistent with the legislative approach to consumer protection[.]

55 Md. App. 710, 724 (1983); *see also Thompkins v. Mountaineer Invs., LLC*, 439 Md. 118, 124 (2014) (noting SMLL was "designed to curb predatory practices that had caused many people, often minorities and older people who were in debt and ignorant of the

27

intricacies of the law, to lose their homes and become subject to crushing deficiency judgments for hugely inflated interest, costs, and fees" (citation omitted)).

In *Duckworth*, borrowers claimed that a lender violated SMLL by fraudulently requiring the borrowers "to sign false statements indicating that the loans were for a commercial purpose when they were not[.]" 55 Md. App. at 712. There, the borrowers entered into a loan for the principal amount of $9,000 and received proceeds in the amount of $5,100. *Id.* at 715. The borrowers made a total of $6,036.24 in payments—less than the $9,000 principal loan amount. *Id.* at 717. The borrowers requested a declaration that the principal amount had been paid in full and for "damages provided by § 12-413 of [SMLL]." *Id.* at 713. At a hearing, a chancellor "did not determine whether the transaction was a commercial loan or a secondary mortgage loan, nor did he issue any declaration as to the rights of the parties." *Id.* We concluded, among other things, that the chancellor "was wrong . . . in failing to declare the rights of the parties with respect to the principal amount of the debts[.]" *Id.*

This Court directed the chancellor to determine on remand whether the transaction was a commercial loan or a secondary mortgage loan. *Id.* at 726. We instructed:

> On remand, the chancellor must determine whether the 1979 loan was a commercial loan. If he so finds, the matter is concluded and judgment should be entered for [lender]. If he does not so find, the transaction was a secondary mortgage loan, and he must then further find whether [agent] knew or should have known the transaction was not a commercial loan. If he finds the requisite knowledge, he must then calculate the damages due the [borrower] under the second sentence of § 12-413 and enter judgment for the [borrower] in that amount.
> Even if he finds that [the agent] neither knew nor should have known that the loan was not commercial, he must **calculate the principal balance on the loan and frame a declaratory decree stating the amount of principal**

[lender] is entitled to recover. **If** [lender] ***has already been paid more than that amount***, the [borrowers] are entitled to judgment for the excess.

*Id.* at 727 (emphasis added). *See also Coner v. Morris S. Berman Unlimited, Inc.*, 65 Md. App. 514, 516 (1985) (vacating the judgment and remanding the case "for redetermination of the amount, if any, due on the mortgage" for violation of CL § 12-413).

More recently, in *Crowder*, we concluded that the "circuit court erred in granting the lenders' motions to dismiss the claims under SMLL solely on the basis that all such claims were barred by statute of limitations." 176 Md. App. at 665. In remanding the case, we determined that the appellants "were entitled to sue for the remedy provided by [SMLL] § 12-413 following each payment of sums in excess of the principal. . . Similarly, they were ***entitled to seek declaratory relief with respect to any payments made within that same time period as well as with respect to any ongoing or future liability under the loans***." *Id.* at 667 (emphasis added). We directed: "On remand, the court may be guided by the comments this Court made with respect to the remand ordered in *Duckworth*." *Id.* at 670. We again reiterated, as we had in *Duckworth*, that the circuit court "must calculate the principal balance on the loan and frame a declaratory decree stating the amount of principal [the lender] is entitled to recover. If [the lender] has already been paid more than that amount, the [borrowers] are entitled to judgment for the excess." *Id.* (quoting *Duckworth*, 55 Md. App. at 727).

This Court has consistently allowed a borrower under SMLL to "seek declaratory relief with respect to any payments made . . . as well as with respect to any ongoing or future liability under the loans," *id.*, and determined that a court must "calculate the

29

principal balance on the loan and frame a declaratory decree stating the amount of principal [the lender] is entitled to recover," regardless of whether the borrower has paid amounts in excess of the principal, *Duckworth*, 55 Md. App. at 727. Accordingly, we conclude that under the doctrine of *in pari materia*, we should interpret CL § 12-1018 as we do CL § 12-413 to allow a cause of action under CLEC for declaratory and injunctive relief, as well as a claim solely for damages seeking penalties under CL § 12-1018(a)(2). Before we conclude our analysis, we consider the purpose of the statutory scheme and whether CL § 12-1018 should be interpreted to advance any remedial purpose.

### 5. Remedial Purpose

As the Court of Appeals has stressed, our "primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny." *Lockshin v. Semsker*, 412 Md. 257, 274 (2010). In construing a statute to "advance [its] purpose," *Neal v. Fisher,* 312 Md. 685, 693 (1988), we construe a remedial statute broadly "'in order to effectuate [its] broad remedial purpose,'" *Lockett v. Blue Ocean Bristol, LLC*, 446 Md. 397, 424 (2016) (quoting *Pak v. Hoang*, 378 Md. 315, 326 (2003)). Likewise, "[f]or similar reasons, exemptions from remedial legislation must be narrowly construed." *Id.* (citation and quotation marks omitted). The Court of Appeals generally defined remedial statutes in *Langston v. Riffe*:

> Generally, remedial statutes are those which provide a remedy, or improve or facilitate remedies already existing for the enforcement of rights and the redress of injuries. They also include statutes intended for the correction of defects, mistakes and omissions in the civil institutions and the administration of the state. The definition of a remedial statute has also been stated as a statute that relates to practice, procedure, or remedies and does not affect substantive or vested rights.

359 Md. 396, 408-09 (2000) (quoting 3 Sutherland Statutory Construction § 60.02, at 152 (5th ed. 1993)); *see also Cathey v. Bd. of Rev., Dep't of Health & Mental Hygiene*, 422 Md. 597, 605 (2011) (quoting favorably definition of remedial statutes in 3 Sutherland Statutory Construction § 60.02, at 152 (5th ed. 1993)). "Under Maryland law, statutes are remedial in nature if they are designed to correct existing law, to redress existing grievances and to introduce regulations conducive to the public good." *Langston*, 359 Md. at 409 (citation and quotations omitted). Our Court of Appeals has "repeatedly held that remedial statutes are to be construed 'liberally' in favor of claimants, to suppress the evil and advance the remedy." *Cathey*, 422 Md. at 605.

As set out above, CL § 12-1018 was designed to provide "protections for consumer borrowers, as well as penalties for lenders who violated those provisions." *Patton v. Wells Fargo Fin. Md., Inc.*, 437 Md. 83, 105 (2014). The "evil" in this context is the failure of credit grantors to follow the dictates of CLEC, and the "remedy" for such a violation is primarily the prohibition from collecting "any interest, costs, fees, or other charges with respect to the loan." CL § 12-1018(a)(2). It protects a borrower from a credit grantor's unbridled violation of CLEC. We, accordingly, hold that CL § 12-1018 is remedial in nature.

We note that our conclusion is buttressed by our prior characterization of CL § 12-413. We have recognized CL § 12-413 of SMLL as "'remedial [in] nature,' and stated that the remedies provided for borrowers by the statute are 'private benefit[s] [conferred] as recompense for the wrong they had suffered as a result of [lenders'] failure to heed the

restrictions of the SMLL.'" *Crowder*, 176 Md. App. at 663 (quoting *Williams v. Standard Fed. Sav. & Loan Ass'n*, 76 Md. App. 452, 455-56 (1988)).

In concluding that CL § 12-1018 is remedial in nature, we further note that a broad interpretation of this statutory provision better matches its purpose to provide protection for borrowers from violations of CLEC. Foreclosing declaratory or injunctive relief until the credit grantor has received the return of its principal—while the grantor may continue to violate CLEC with impunity—delays relief under CLEC. For example, CL § 12-1005(a) provides that certain fees and charges "when combined with any finder's fee imposed by a mortgage broker under § 12-804, may not exceed 10 percent of the original extension of credit." We think it would frustrate the remedial purpose of the statute if a borrower was forced to continue paying fees in excess of 10 percent until the principal amount of the loan was paid off. In another example, if a credit grantor begins charging interest in excess of 24% (in violation of CL § 12-1003) on a car loan, we think it would also frustrate the purpose of CLEC if the borrower was barred from enjoining these violations before the credit lender repossesses the car merely because the borrower could not afford to pay off the remaining principal on the loan.

Based on the remedial purpose of CL § 12-1018(a)(2), we conclude that a borrower may be entitled to the penalties provided in CL § 12-1018 upon a violation of one or more of CLEC's provisions.

### 6. Analysis

We have established that a plaintiff is required to allege actual damages or request appropriate declaratory or injunctive relief under CLEC in order to survive a motion to

32

dismiss for failure to state a claim. Ms. Bolling has failed to allege actual damages or request any other appropriate relief.

The operative complaint alleged two potential violations of CLEC: that Bay Country "specifically refused to provide Ms. Bolling with the requested written statement" in violation of CL § 12-1025; and that, "[a]fter the date of the repossession, [Bay Country] demanded money from Ms. Bolling in an amount not collectible under her credit contract." Ms. Bolling's complaint contains the general allegation that her "claim" totals $35,000.00.

We disagree with the circuit court's conclusion that Ms. Bolling's claim for relief under CL § 12-1018(a)(2) failed because that statute limits the borrower's relief under CLEC to payments made in excess of the principal amount of the loan, as articulated in the string of federal cases tracing back to *Bediako v. American Honda Finance Corp.*, 537 F. App'x 183 (4th Cir. 2013). However, missing from Ms. Bolling's complaint, or her response to the motion to dismiss, are any factual allegations that Bay Country collected more than the principal loan amount or that support her claim that Bay Country demanded "money . . . in an amount not collectible under her credit contract." Ms. Bolling did not seek declaratory or injunctive relief but only prayed "actual damages" and statutory penalties under CL 12-1018(a) and (b) and without identifying the damages sustained.[10] In

---

[10] Ms. Bolling does not challenge the trial court's determination under CL § 12-1018(b) that she was not entitled to treble damages. On this point, the trial court determined that treble damages were unavailable because the "case does not involve allegations in excess of the principal amount" and "[e]ven if it did, the complaint fails to state a claim for relief as it is devoid of factual allegations constituting a knowing violation of CLEC." Because Ms. Bolling does not challenge or even address the trial court's determination under CL § 12-1018(b), we do not address whether, as Bay Country argued below, treble damages only apply when the borrower has paid more than the principal.

33

short, Ms. Bolling's amended complaint fails to assert a compensable claim under CLEC or other appropriate relief. Accordingly, we affirm the judgment of the trial court dismissing Count I of the amended complaint for failure to state a claim.

### 7. Conclusion

Based on CLEC's plain language, its statutory construction and legislative history, the broad remedial purpose of CL § 12-1018, and the principles articulated in *Patton v. Wells Fargo Financial Maryland, Inc.*, 437 Md. 83 (2014), *Len Stoler, Inc. v. Wisner*, 223 Md. App. 218 (2015), and *Crowder v. Master Fin., Inc.*, 176 Md. App. 631, 667 (2007), we hold that a borrower may bring a claim under CLEC for a violation against a credit lender, even when the borrower has not paid amounts in excess of the principal. A borrower may bring a claim for declaratory and injunctive relief and/or a claim for damages. We hold that the underlying complaint failed to allege actual damages or request other appropriate relief under CLEC. We affirm the judgment of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**